IN THE MATTER OF THE APPLICATION OF THE COMMON COUNCIL OF THE CITY OF BROOKLYN IN RELATION TO THE OPENING OF NORTH THIRTEENTH STREET

Proceedings were instituted by the common council of the city of Brooklyn under the act of 1871 (chapter 833, Laws of 1871), which authorized them to open and continue North Thirteenth street, from First street "to the East river, and to the permanent bulk-head line." While the proceedings were pending the act of 1873 (chapter 334, Laws of 1873) was passed, which it was claimed established a new bulk-head line over 200 feet beyond the line as it was at the time of the passage of the act of 1871. *Held*, that the intent of said act of 1871 was to open the street as a public highway to the waters of the East river, and the artificial shore as ·established by the bulk-head line; that it did not give an absolute and fixed boundary at the shore of the river as it then existed, but a shifting terminus at the shore as it might exist either by change in the natural banks or in the artificial shore ; that conceding that the act of 1873 changed the bulk-head line, the law carried the street to the new river line; also that the act of 1871 was not repealed by implication by the act of 1873.

*It seems*, that had the line been changed after the street had been opened and improved, the public would have had a right of way over the new made land to the river, and the charge of it as a public highway.

Nominal damages only were allowed to P. & K., claimants for compensation. The deed under which P. claimed bounded the land conveyed by several streets, one of which was North Thirteenth street. A sepa- ·rate clause conveyed the interests of the grantees to the center line of the streets lying in front of and adjacent to the land conveyed, adding "of which streets North Thirteenth street has not been opened or ceded to the public." In the deed to K. one of the boundary lines is given as "the center line of a parcel of land called North Thirteenth street," although not opened as a street. It appeared that in 1871 the owners inclosed the land covered by the street, but whether before or after the passage of the act of that year above mentioned did not appear; nor did it appear by what authority the strip of land was designated and set aside as a street, or when dedicated. *Held*, that the deeds contained clear recognitions by grantors and grantees of the rights of the public in ·the land as a street; that if it was not in fact a public highway the *onus*

was upon the claimant for compensation to show that fact; that in the absence of evidence to the contrary, a dedication of the land was properly found by the commissioners; that it could not be assumed that the inclosing the land was before the public acted upon and accepted the dedication by directing the opening of the street; and that the allowance of nominal damages only was proper.

(Argued March 19, 1878; decided March 26, 1878.)

APPEAL from order of the General Term of the Supreme Court, in the second judicial department, affirming an order of Special Term which confirmed the report of commissioners appointed to assess damages in proceedings instituted by the common council of the city of Brooklyn under chapter 833, Laws of 1871, for the opening of North Thirteenth street in said city.

The appellants who were The Charles Pratt Manufacturing Company, Charles Pratt & Caroline Kloss, objected to the report on the ground that the act (chapter 334, Laws of 1873), by extending the bulk-head line rendered the opening as provided for by the act of 1871 impossible; that the two acts were inconsistent, and in consequence that the former act was repealed by the later. The appellants also objected to the confirmation of the report, on the ground that the compensation allowed was inadequate. The commissioners found as to one piece of land claimed by Charles Pratt and as to the piece claimed by Caroline Kloss in substance, that their title was subject to a dedication to the public use, and allowed only nominal damages; as to another parcel they awarded to Pratt, or the Pratt Manufacturing Company $30,000.

The further facts appear sufficiently in the opinion.

*Everett P. Wheeler*, for appellants. The bulk-head line mentioned in the statute was that established when it was passed. (*Halsey* v. *McCormick*, 18 N. Y., 147; *White's Bank* v. *Nichols*, 24 id., 65; *Banks* v. *Ogden*, 2 Wal., 57.) The act of 1871 (chap. 853) was repealed by the act of 1873 (chap. 334). (Sedgw. on Stat. Law [2 ed.], 104; *Ex. Pet.*

Co. v. Lacy, 63 N. Y., 422; Pierce v. Delamater, 1 id., 16 ; People v. Mayor, 32 Barb., 102, 121.) The acceptance by the public of a street is not to be presumed but must be affirmatively proved. (Niagara Bridge Co. v. Bachman, 66 N. Y., 261; Fonda v. Borst, 2 Abb. Ct. App. Dec., 155; 2 Keyes 48; Holdane v. Cold Spring, 21 N. Y., 474; Cook v. Harris, 61 id., 448, 454; Badeau v. Holmes, 14 Barb., 328; 2 Washb. on R. E. [2d ed.], 580, 607; Maynard v. Maynard, 10 Mass., 456; Elsey v. Metcalf, 1 Den., 326.) The right of revocation may be exercised by the grantee of the land dedicated. (4 Kent's Com., 467, 468.) A change by the Legislature in the line of a dedicated street is a formal refusal by the public to accept the dedication, provided access to the land by some highway is preserved. (Under-wood v. Stuyvesant, 19 J. R., 181; Sedgw. Const. Stat. [2d ed.], 554; People v. Green, 58 N. Y., 295; Bank of Hamil-ton v. Dudley, 2 Pet., 526; People v. Lawrence, 36 Barb., 177, 191; Archer v. Whalen, 1 Wend., 179.) A dedication for one purpose is not a dedication for another. It is to be limited to the precise terms of the gift. (Heard v. City of Brooklyn, 60 N. Y., 242; In re Brooklyn Heights, 48 Barb., 288.) The commissioners were bound to state the principles on which they proceeded in making their award. (In re Flatbush Ave., 1 Barb., 286, 292; In re N. Y. C. R. R. Co., 6 Hun, 149.) Not only the value of the land used must be paid, but full compensation must be made for injury to the adjoining land. (Gerard on Titles [2d ed.], 41; In re Furman St., 17 Wend., 649, 671; 6 Hun, 149; In re Utica R. R. Co., 56 Barb., 456; A. and S. R. R. Co. v. Dayton, 10 Abb. Pr. [N. S.], 182; W. and R. R. R. Co. v. Stauffer, 60 Penn., 374; Carpenter v. Landiff, 42 N. H., 218; Hatch v. Vt. C. R. R. Co., 25 Vt., 49.) The bulk-head should be paid for. (In re Wall St., 17 Barb., 617.)

William C. De Witt, for respondent. When a right of way is once established to a river it continues there over any projection of the land, interposed either naturally or artifi-

cially, legally or illegally. (*People* v. *Laimbeer*, 5 Den., 9; *Wetmore* v. *At. W. Lead Co.*, 37 Barb., 70; *In re Furman St.*, 17 Wend., 649, 661; *Orr* v. *City of Brooklyn*, 36 N. Y., 661.) It was the exclusive province of the commissioners to decide upon the value of the lands taken. (2 Hill, 443.)

ALLEN, J.   We have nothing before us by which we can determine, with any certainty, where Bushwick inlet, a stream wholly within Kings county, terminates by a junction with East river, which, from low-water mark, is within the terminal limits of the city and county of New York. In the absence of evidence leading to a different conclusion, it must be assumed that the Legislature, in fixing the bulk-head lines in front of the lands of the appellants, at the foot of North Thirteenth street extended, regarded the waters as a part of the East river, whatever may have been, or may be, the form of the shore line, and as within the shore lines of the city and county of New York, and not as part of an inlet or creek within the county of Kings. (Laws of 1857, chap. 763.)   By chapter 606 of the Laws of 1865, the description of the bulk-head line and the pier line adjacent to the shores of the port of New York, as established by the act of 1857 (*supra*), were amended so as to locate the bulk-head as now permanently fixed under the act of 1873 (chap. 334), between the southerly side of North Thirteenth street and the southerly side of North Tenth street. The bulk-head line as then established did not extend across North Thirteenth street. In 1871, the law authorizing the opening of North Thirteenth street was enacted (S. L., chap. 833), and by it the common council of the city of Brooklyn was empowered to open, continue and complete the street " to the East river and to the permanent bulk-head line." The intention was to open the street as a public highway to the waters of the East river and the artificial shore as established by the bulk-head line, and the purposes of the act and the intention of the Legislature would not have been accomplished by arresting the street at the bulk-head line of 1857,

over 200 feet inland from the bulk-head line on the south
line of the street as extended.    The street would have been
extended north to the river or the bulk-head line as before
established, but would have been, so far as appears, a *cul de
sac*.    The street was authorized to be opened to the East
river and the bulk-head line 872 feet from First street, as
the bulk-head line was located by the act of 1865.    But if
this is not so, then resort may be had to the act of 1873,
which changes the bulk-head and pier-head lines to conform
to the map entitled " map of water-fronts on East river at
Bushwick inlet, Brooklyn," made by D. Rosa, etc., and
filed in the office of the secretary of State, on the 5th of
June, 1865, which map may have been made pursuant to the
act of 1865 (*supra*), except in so far as it projected a bulk-head
line north and east of North Thirteenth street, and as I infer
is an extension of the bulk-head line contemplated by that act
northerly and easterly across North Thirteenth street, and in
a curve until it strikes the former bulk-head line.    Whether
this act then for the first time established the permanent bulk-
head line as now located, or merely completed and perfected
that which had been intended under the act of 1865, and so
conformed what might have been imperfect, irregular or
unauthorized, is not material.    At the time of the enactment
of the law, the authority conferred by the act of 1871 had
not been executed.    Proceedings for the opening of the
street and the appraisal of the damages to the land-owners
were then pending before the commissioners.    The later
act, regulating the bulk-head, and establishing its line further
from First street, did not in terms, or by implication, repeal
or modify the provisions of the act of 1871.    There was no
connection between the two statutes.    The authority was to
open the street to the East river and the bulk-head line, and
that was a shifting terminus, not an absolute and fixed bound-
ary at the bulk-head line, as it existed at any particular
time.    The statute made provision for a street to the river,
not to the shore of the river as it existed at the time of its
passage, but as it might exist, either by change in the natural

banks or in the artificial structures erected for the purpose of commerce. The bulk-head line being changed before the opening of the street, the law carried the street to the river line; and, had the line been changed after the street had been opened and improved, the public would have had a right of way over the new made land to the river, and would have had the charge of it as a public street. (*People* v. *Lambier*, 5 Den., 9.)

Grants of land may be by fixed and permanent monuments, or by shifting boundaries. Boundary lines are generally certain, and fixed by circumstances or monuments existing at the time, but they are not necessarily so, and whether fixed or shifting depends upon the construction of the deeds and the intention of the parties. (*White's Bank* v. *Nichols*, 64 N. Y., 65.) The same rule applies in the interpretation of a statute, and the intent of the act under consideration is very obvious. The statute of 1873 did not so change the character of the locality as to render the exercise of the authority conferred by the act of 1871 unnecessary or impracticable, or even more difficult, nor was the passage of the act any evidence of a change of intent on the part of the Legislature, as declared by the act of 1871, to give the public a thoroughfare to the river and the bulk-head line by opening North Thirteenth street to both.

It is objected that compensation should have been made to the owners of the land covered by the street between First street and Pratt street. Nominal damages only were given, upon the ground that the land had been dedicated, or in some way appropriated, to the use of the public for a street before the present claimants became the owners, and that they, therefore, had but a nominal interest in them.

If the present appellants took title to the lands, subject to such prior dedication or appropriation, they were only entitled to nominal damages. (*In re Furman St.*, 17 Wend., 649; *People* v. *Lambier*, *supra.*) The record is barren of evidence as to the authority by which the strip of land on the west side of First, in line with Thirteenth street on the

east, was designated or set apart as a street, or whether it was at any time, and if so, when dedicated to the uses of the public as a street by the owner, or whether it was laid down as a street upon any map by which conveyances had been made, or upon a map of the city made by authority of law.

It may be conceded that a dedication of lands for a public use is not perfect, so as to divest the owner of his absolute dominion over them until accepted by the public ; but that does not aid us in determining the question now made upon this record. The right of the public, and the fact that the strip of land had been in some way set apart as and for a public street or highway, is proved by the conveyance to the claimants, and upon which they rely. The deed to Pratt bounds the lands conveyed by several streets, including North Thirteenth street, and by a separate clause conveys the interest of the grantors in the several streets lying in front of, and adjacent to the plot conveyed, to the centre lines thereof respectively, and adds : " Of which streets North Thirteenth street has not been opened or ceded to the public." The interest conveyed was the title of an owner, bounded by a street or highway, who is presumed to own to the centre of the same, subject to the easement in the public, and such a conveyance is a clear recognition by grantor and grantee of the rights of the public. The grant to the husband and devisor of the appellant Kloss is somewhat different, and but little less emphatic as evidence of an existing or inchoate right in the public to the strip of land as a street. One of the lines of the land granted is " the centre line of a parcel of land called North Thirteenth street, although not opened as a street." The grantee took title to the portion of land included within the lines of the so-called street, as a street, and if it was not in fact a legal highway, the onus was upon the claimant for compensation for its actual appropriation as a street, to show that it was not in fact a street by dedication or otherwise. The commissioners have adjudged that the land had been dedicated as a street, and the record does not disclose facts to impeach their judgment. There is no

evidence to establish a withdrawal of the dedication before acceptance, if the present owners could revoke a dedication made by their grantors. Whether they could do so might depend upon many circumstances. Conveyances might have been made to others in reference to the street as contemplated, so that the grantor could not have recalled it ; and if so, any acts of the grantees in that direction would have been fruitless. (*In re Furman street, supra.*)

The act relied upon as a revocation of the prior dedication is the enclosing of the lands. This was not done until in 1871, and after the deed to Pratt, in March of that year, and how soon thereafter does not appear. We cannot assume that it was done before April 28, 1871, when the public acted upon the dedication and accepted it, by directing the opening of the street. The appellants do not show error in the assessment of nominal damages for the parcels of land now under consideration. Whether the commissioners allowed the appellant Pratt any sum specifically for his bulk-head, which constituted a part of the land taken, and for which compensation was made, does not appear. The appellants might have had a specific report on that subject, but as the commissioners have allowed $30,000 in gross for the land taken, it must be assumed that compensation was made for the value of the property taken, as estimated by the commissioners in the condition in which it then was with its bulk-head, and all permanent improvements and additions.

I am also of the opinion, in the absence of a report specifically stating the rule by which the commissioners made their estimate and assessment of damages, that in assessing to Pratt or the Pratt Manufacturing Company, for the plot marked 1 on the map, they must have taken into consideration the entire loss and damage to the owners of the entire plot, by reason of the taking of the portion for the street, and leaving a gore of land between the street and Bushwick inlet or the bulk-head line. It is not the case of one damaged or injuriously affected in the use and enjoyment of his lands, by taking the lands of another, for which separate

compensation might be made, perhaps ; but the injury consists. in taking a part and leaving a portion of less value for enjoy-ment than it would have been in connection with the part taken.    It cannot be assumed that this consideration was ignored by intelligent commissioners, in estimating the dam-ages for the appropriation of the land taken.

We find no error in the proceedings, and the order must. be affirmed.

All concur, except RAPALLO, J., who concurs as to the right to extend the street, but dissents from that part which denies compensation for the land on the ground of dedication.

Order affirmed.