NICHOLAS DE PEYSTER, AS EXECUTOR, ETC., OF GEORGE DE PEYSTER, DECEASED, APPELLANT, v. HENRY W. T. MALI AND OTHERS, RESPONDENTS.

*City of New York — award for land taken for the purposes of a street — action by one claiming to be entitled to it against one to whom it was made — what must be shown to authorize a recovery — 1813, chap. 86, sec. 184.*

In 1873 awards were made to the defendants for land taken for the purpose of constructing one of the avenues passing through Riverside park in the city of New York. The land so taken formed a part of what was known as the Bloomingdale road, which had been used as a public highway for many years.

This action was brought by the plaintiff to recover the awards so paid to the defendants, upon the ground that the plaintiff's testator, and not the defendants, was the owner of the fee of the land so taken, and the court, upon the trial of the action, found that such was the fact.

*Held,* that to entitle a party claiming an award to recover it, in an action brought under section 184 of chapter 86 of 1813, from the person to whom it had been paid, it was not sufficient to show that the person receiving the award had no right to take it, but it must be established that the plaintiff was the person to whom it of right belonged, and to whom it ought to have been paid.

That, as in this case, the plaintiff had a mere nominal right or interest in the

land taken for the avenue, for the taking of which by the city he was not entitled to any substantial award, he could not maintain this action.

Where land is conveyed by a deed bounding it "by the northerly side" of a highway, the grantee takes no title to the land lying in the road on the southerly side of the premises conveyed.

Appeal by the plaintiff from a judgment dismissing the complaint herein, entered upon the trial of the action by the court with a jury.

*James A. Deering*, for the appellant.

*Franklin Bartlett*, for the respondents.

Ingalls, J.:

The question to be decided upon this appeal is not simply, whether Henry W. T. Mali, or his heirs, were legally entitled to the money received under the two awards of damages, and paid by the city, and which is sought to be recovered by the plaintiff in this action. The question is rather whether the plaintiff has established a right of action based upon the title of George De Peyster, his testator, by which such damages could have been claimed by him as against the city, for taking the land in question. If no such title or right of action has been proved, it necessarily follows that no such recovery can be had against the defendants, even though they have been successful in securing money to which they may not have been legally entitled as against the city. The theory of this action is that the defendants have received and refused to pay over money which in equity and good conscience belongs to the plaintiff. The determination of this question depends upon whether it has been established by the facts herein, that George De Peyster was entitled to such damages as against the city. We have carefully examined the findings of fact, in the light of the evidence upon which they are based, and have also considered the opinion of the learned judge who decided the cause, which shows that he has given the matter a thorough investigation; and we are satisfied with the result, and the reasoning by which it was attained, as shown by such opinion. Without further discussing the case we prefer to adopt the opinion referred to as furnishing sufficient reason for affirming the judgment, with costs.

The opinion is as follows:

Daniels, J.: This action is brought to recover the sum of $6,634, together with interest upon it from the 21st of March, 1873, being

the amount of awards made for land taken for the purpose of constructing one of the avenues passing through Riverside park in the city of New York. The land is situated on One Hundred and Eleventh and One Hundred and Thirteenth street, and when it was taken formed a part of what was known as Bloomingdale road. It was that part of the road running through the two blocks between One Hundred and Eleventh and One Hundred and Thirteenth streets. The land upon each side of this portion of the road was at one time owned by Nicholas De Peyster. Before he acquired it, and whilst he owned it, the road existed substantially as it did when at this point it was made a part of what has since been called Riverside drive, which now constitutes one of the avenues of the city. It appears by the evidence that the Bloomingdale road, about the year 1703, extended northerly to a point near a barn, known as that of Nicholas De Peyster, situated where the dwelling-house of Abram Hoogeland formerly stood. Precisely where this barn and dwelling-house were situated does not appear, but they were probably in the vicinity of One Hundred and Sixteenth street. From the time the road was opened, down to the time when it was made a portion of the enlarged avenue, it was maintained and used as a public highway. How the right to it was originally acquired has not been made to appear, but it probably was derived from the assent or acquiescence of the neighboring inhabitants in its use and maintenance. This of itself was sufficient, where it had extended through so long a period of time, to establish it as a public highway. The land within the limits of the road in that manner became subjected to a permanent easement in favor of the public, and while that existed, even though the title to it remained in the adjacent owners, it was of only a nominal value as long as it was subjected to this right in the public to use it as a highway. In that respect, the value of the title or all the fee in the land itself was no greater than it has been held to be where the owner of the adjacent property has conveyed it by making one of its boundaries the line of a proposed highway. In the latter class of cases it has been repeatedly held, where land has been so appropriated to the uses of a street, that the fee in it afterwards is of no greater value than that of a mere nominal sum. In other words, that it can be of no substantial benefit to the person who may own

it, for the reason that the right to use the land as a street or highway has been created. (*Matter of Lewis Street*, 2 Wend., 472; *Wyman* v. *Mayor*, 11 id., 487; *Matter of Furman Street*, 17 id., 651; *Matter of Thirty-second Street*, 19 id., 128; *People* v. *Lambier*, 5 Denio, 9–19; *Matter of Brooklyn*, 73 N. Y., 179, 185.) The foundation of this principle is that the owner of the fee, after it has been subjected to the uses of a street or highway, can make no beneficial use of it for himself, and for that reason, when this naked fee itself has been afterwards divested by means of legal proceedings, it may be done by paying him a nominal sum merely, as the full measure of the compensation he is entitled to receive for the loss of such a title. The same principle applies to a street or highway of the nature of that now in controversy, because it is subjected to the same servitude, and changing it nominally from a country road to an avenue of the city imposes no new burden upon it. The right of the public over it still remains the same, and that is to use it for all the purposes of passing and repassing over it. That may be greater or less, as the convenience of the public may require, and it must necessarily increase with the increase of the neighboring population. The fact that the road was widened in no matter enlarged the servitude to which the land, previously within its limits, had been subjected. That would, at the most, only increase its convenient use by the public. As this land was situated at the time when the road was changed into the enlarged avenue, the naked title to it, or the fee in it, was therefore of no substantial value.

It also appeared that while Nicholas De Peyster was the owner of the land over which this portion of the Bloomingdale road extended, and on or about the 7th of April, 1795, he executed a release to the mayor, etc., of the city of New York, releasing his right to the land through his farm, within the bounds of this highway, as a four-rod road, and providing for its extension northerly from the point to which it had previously been maintained. The nature of the release which was then executed, justifies the construction that it was designed not only to provide for the extension of the road, but also to regulate that portion of it which had previously existed in this vicinity. And for the purpose of authorizing that to be done, the release was also executed by several other adjacent owners of the soil. The object of it was to have the road maintained as a four-rod road, not

only through the lands of Nicholas De Peyster, but also through those of persons owning lands both to the south and to the north of that owned by him, and to warrant the public authorities in making that contemplated improvement. The persons executing the release, including De Peyster, for themselves, their heirs and assignees, did in terms, grant, release and forever quit-claim unto the mayor, etc., and their successors, the parcels of their respective lands, or so much thereof as might be necessary for the said road of the breadth of four rods; to have and to hold such lands for a public road with the appurtenances to and for the sole and only use of a public road forever. It has been claimed, because of the fact that measures were taken only for the continuation of the road northerly from the point where it terminated at the barn of Nicholas De Peyster, that the release was designed to affect his property, only so far as it was situated north of that point. But the language of the release will not justify such a restricted construction of its terms. It appears by that that the object of the parties was not only to secure an extension of the road itself, in a northerly direction, but in addition to that, its regulation so far as it had been previously maintained and used through the land of the individuals by whom the release was executed. It may be that the execution of this release imposed no greater burden on the property over which the road had existed, than that to which it had been previously subjected, but it certainly had the effect of rendering that entire, distinct and definite in its character, by subjecting the four rods of land, intended to be within the bounds of the road, to a perpetual servitude or easement in favor of the public. It is clear from the use of the land constituting the road, and the effect which must be given to this release, that De Peyster himself retained no such available interest to the title to the land in the road as would justify a substantial award for it, when it might afterwards, to perpetuate its use, be taken and vested in the public.

At the time of his decease, he left a will by which he devised this portion of his property to his son, George De Peyster, and it was conceded that he acquired by means of that devise whatever interest Nicholas De Peyster previously had in this portion of his estate. The son, George De Peyster, also left a will at the time of his decease by which whatever interest he

had in the property now in controversy passed to the plaintiff in this action.    During the lifetime of George De Peyster he conveyed four acres and a-half of his estate lying westerly of the Bloomingdale road to Silas Tobias, and it is under the title created by that conveyance that Henry W. T. Mali and his heirs claimed the property by which the awards in controversy were made.    It appears, however, by the deed which was given to Tobias that the easterly line of the land conveyed to him was bounded by the northerly side of the Bloomingdale road; and for that reason, as instruments of this nature have been construed in this State, no title to the land forming part of the road itself passed by the deed.    (*Jackson* v. *Hathaway*, 15 *Johns.*, 447; *Mott* v. *Mott*, 68 N. Y., 246.)    These authorities, and those referred to in the opinions, require this deed to be so construed as to limit the right to the property conveyed to the westerly line of the road, for the reason that it was bounded upon the side and not, in general terms, upon or along the road itself.    An extended array of authorities has been cited from the reports of other States, upon which it has been claimed that a boundary like this upon the side of a highway should extend the title of the grantee to the center of the land used as the highway.    But it is not necessary to consider whether they should be attended with that effect or not, because the rule of construction seems to have been settled in this State the other way. It is quite evident, therefore, that the persons who received awards in controversy by means of the title derived under the conveyance to Tobias had no right to them, for the reason that they had no interest whatever in the title to the land included within the bounds of the highway; and any possible right or interest they might have in the enjoyment of the highway itself was in no sense restricted or diminished by its incorporation within the bounds of the Riverside drive.    But the fact that they were not entitled to be awarded the sums of money which were received by them is not sufficient to entitle the plaintiff to recover the money from them, for the reason already stated, that neither himself nor the testator had any such right or interest in the lands included within the bounds of the highway as entitled them to any substantial award for it, when its formal fee was taken under the law and vested in the city.    While that title was property it was not such as had a substantial value,

and for that reason it could be taken and held for the purposes of the same public uses upon payment of a mere nominal consideration.

It is only when the party claiming the awards is the person to whom they shall of right belong and ought to have been paid ; that he can recover them, under the terms of the statute, from the person or persons who have received them. (2 Rev. Laws, 1813, § 184, p. 419.) It is not sufficient to maintain such an action that the person receiving the money had no right to take it, but it must be established beyond that, as a matter of fact, that the plaintiff was the individual to whom it of right belonged and ought to have been paid ; and he certainly cannot be such a person when it appears that he had only a nominal interest in the property taken, and for which the award was made. It has been urged, however, that when this new avenue called the Riverside drive was established that the Bloomingdale road was abandoned and closed, and as a result of that circumstance that the plaintiff's interest in the land became valuable and the proper subject of substantial compensation when the fee to it was vested by means of the proceedings taken for opening and improving the new avenue.

This position has been advanced under what has been relied upon as the effect of chapter 697 of the Laws of 1867. That provided that the board of commissioners of the Central park should have power to lay out and establish streets, avenues, roads, squares or places within that part of the city of New York which is bounded northerly by the southerly side of One Hundred and Fifty-fifth street, easterly by the westerly side of Eighth avenue, southerly by the southerly side of Fifty-ninth street, and westerly by the Hudson river, and within 350 feet in width, surrounding the Central park. In the exercise of their authority they were empowered, not only to open and widen streets and avenues, but to close and abandon any of those at that time in use. They were required to file two similar maps or plans, showing the streets which they should lay out or retain, and those which were not shown or retained on such maps were, from and after the time of filing them, to cease to be or remain public streets, avenues, roads, squares or places. (Laws 1867, ch. 697 [vol. 2], 1748–1750.) The commissioners performed the duties assigned to them by these provisions of the statute, and on the maps filed by them did not in terms retain this portion of the

Bloomingdale road. It was, however, included within the bounds of the new avenue which they laid out, and it from that time continued to form a portion of that avenue. In the locality in controversy, the avenue was created by adding additional lands upon each side of that then known and maintained as the Bloomingdale road. The road, therefore, was neither abandoned nor closed, but the lines of the new avenue, within which this portion of it was included, as they were laid out upon the commissioners' maps, clearly showed it to have been retained as a part of that avenue. And for that reason the title to that portion of the land which was comprised within the bounds of the Bloomingdale road still remained subject to the same easement over it as that which had previously existed. No change in this respect was made by the proceedings which were taken under the provisions of this statute, and no interest was created in the owner of the naked fee entitling him to any substantial award for the appropriation of the old road and the construction of the new avenue. The bed of the old road was retained by the action of the commissioners and by force of the statute, for the same public use as that to which it had previously been devoted, and for that reason the value of the owner's title was in no respect changed. (*Matter of Commissioners of Central Park*, 54 How., 313; *People ex rel. Roberts* v. *Aston*, MS. opinion BARRETT, J., First Department, General Term, April, 1880), What has taken place under the act of 1867, has not sustained the plaintiff's right to the awards now in controversy. Neither before that nor since then has he been the person to whom the awards of right belonged, or ought to have been paid, as those phrases were employed in the act of 1813, and because of that defect of right, no action can be maintained by him for the recovery of the moneys which were received under the awards by the defendants in this case, even though they themselves, or the persons through whom the moneys were derived, had no right to demand or receive them. The consequence is that this action cannot be sustained, and judgment must be directed in favor of the defendants.

DAVIS, P. J., and BRADY, J., concurred.

Judgment affirmed, with costs.