GEORGE BECHTEL, PLAINTIFF, *v.* THE VILLAGE OF EDGEWATER, DEFENDANT.

*Construction of a charter defining the boundaries of a village — when they vary with changes in the shore of a bay —* 1866, *chap.* 214.

In the charter of the village of Edgewater (chap. 214 of 1866) the boundaries of the village are described as commencing at a point in the shore of the bay of New York, and as running finally "in a due south-easterly line to the lower

bay of New York, and thence along the lower and upper bay of New York north-easterly, and northerly to the place of beginning."

*Held,* that it was not intended to give an absolute and fixed boundary at the shore as it then existed, but a shifting terminus at the shore as it might exist at any time thereafter, whether it should have been extended into the bay by natural cause or by artificial structures erected for the purposes of commerce.

SUBMISSION of a controversy upon an agreed statement of facts under section 1279 of the Code of Civil Procedure.

The boundaries of the village of Edgewater, in the county of Richmond, as defined by the charter of said village, are as follows :

" All that certain tract of land in the towns of Middletown and Southfield, and county of Richmond, embraced within the following boundaries, that is to say : Commencing at a point on the shore of the bay of New York, where the center line of Arietta street, if prolonged, would intersect the shore of said bay, and running * * * thence in a due south-easterly line to the lower bay of New York ; and thence along the lower and upper bay of New York north-easterly and northerly to the place of beginning, shall hereafter be known and shall constitute the village of Edgewater."

At the time of the passage of the act by the legislature (chap. 214, Laws of 1866), incorporating said village of Edgewater, there were but a very few grants of land under water which had been issued to the owners of the adjacent upland in said village, and scarcely any docks or piers had been built thereon, except the docks at Tompkinsville, Stapleton and Vanderbilt Landing, which were used for ferry purposes. Since that time, however, as the village progressed and the water privileges advanced in value, almost every owner of the adjacent upland along the entire eastern shore of said village, at least three miles in length, has obtained from the commissioners of the land office a grant of land under water. In some instances the owners have entirely filled in in front of the adjacent upland, so that where was formerly only water, now there are lands upon which are erected houses and other buildings. In other instances the owners have built out wharves and piers upon which have been erected storehouses and other buildings for commercial purposes, and gradually a large portion of the eastern line of the

upland of said village has been extended by accretion and filling in, until now highways and private roads run where formerly the waters of the bay of New York ebbed and flowed. The questions submitted were as follows:

*First.*— Does the boundary of the village of Edgewater, "*along the lower and upper bay of New York,*" include within the limits of said village the lands under water, together with the docks, wharves and piers, and the improvements thereon erected, of which grants have been issued by the commissioners of the land office to the owners of the adjacent upland within the limits of said village?

*Second.*— If it does, then has the village of Edgewater such a territorial jurisdiction as to entitle its trustees to assess and levy taxes upon said lands under water, together with the docks, wharves and piers, and the improvements thereon erected as aforesaid?

*Wm. M. Mullen,* for the plaintiff.

*Stephen D. Stephens* for the defendant.

BARNARD, P. J.:

The description of the village "along the lower and upper bay of New York" was not intended to give an absolute and fixed boundary at the shore as it then existed, but a shifting terminus at the shore as it might exist, either by change in the natural banks or in the artificial shore. (*Matter of City of Brooklyn,* 73 N. Y., 179.) The village was extended to the bay, not as it existed at the passage of the act, but as it might exist after artificial structures were erected for the purposes of commerce. Whether a grant is permanent or shifting depends upon the construction of deeds and grants and upon the intent of the parties or upon the legislative intent. That this boundary was intended to be shifting, by the legislature, is very plain. The grant was to a village of municipal rights. It included all the upland along the bay of New York. The village was granted municipal privileges and no reason could exist why a narrow strip of land in front of the village should have been permitted to cut off the inhabitants from the bay or the village from jurisdiction over the same after structures had been erected for commercial uses.

There should be judgment for the defendant upon the submitted case, with costs.

Pratt, J., concurred.

Judgment for defendant, upon submitted case, with costs.