In the Matter of the Application of JOHN P. ADAMS, as Commissioner of City Works of the City of Brooklyn, to Acquire Land for Street Purposes.

In 1835 the commissioners appointed under the act of that year to lay out streets, etc., in the city of Brooklyn (Chap. 132, Laws of 1835) made and filed a map showing a street passing over lands owned by H. The street was never actually opened or regulated. In 1851 H. conveyed the adjoining lands by deed which contained a reservation of his title and interest in the land forming the street. In 1864 the department of assessment of the city made and filed a map including said lands in which the street appeared substantially as in the map of 1835, and since then no assessment has been made or tax levied upon the land of H. included in said street. In 1879 the executors of H. filed a map of his lands, laid out in streets, blocks and lots, corresponding with the commissioners' map, with a notice, however, indorsed thereon to the effect that it was not intended to dedicate any of the lands lying within the lines of the streets to public use; afterwards said executors conveyed lots, bounding them upon said streets, and including the land within the street lines in front of the lots conveyed. In proceedings instituted by the municipal authorities to acquire title for street purposes to the lands within the lines of said street as so laid out, *held*, that H. and his executors, as between themselves and their grantees, devoted the lands to use as a street, and the latter acquired an easement therein for that purpose; that the executors were only entitled to an award for the value of the public easement, deducting therefrom the value of the private easement, and as the added burden was merely technical and nominal, they were only entitled to nominal damages.

(Argued January 29, 1894; decided February 27, 1894.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made December 1, 1893, which reversed an order of Special Term denying a motion to confirm the report of commissioners of estimate, granted said motion and confirmed said report.

The facts, so far as material, are stated in the opinion.

*James C. Bergen* for appellant. *Onus* of establishing dedication of lands by owner to public use is upon party setting up same and claiming to dispose of, use or otherwise interfere with such lands on the basis of such dedication. (*Holdane* v.

*Trustees Cold Spring*, 21 N. Y. 477.) Respondent failed to show acceptance by the public. Intention of owners to dedicate is not sufficient. It must be followed by acceptance by the public or a private person. (*Strong* v. *City of Brooklyn*, 68 N. Y. 1; *De Witt* v. *Village of Ithaca*, 15 Hun, 568; *Holdane* v. *Trustees Cold Spring*, 21 N. Y. 478.) Respondents failed to show acceptance on the part of private persons interested. (*In re Ingraham*, 4 Hun, 498; *City of Buffalo* v. *Pratt*, 131 N. Y. 293.)

*Almet F. Jenks* for respondent. There was a dedication of the land lying within the lines of Fifty-first street. (2 Dillon on, Mun. Corp. [4th ed.] § 640; Gerard on Tit. to Real Estate [3d ed.], 738, 739; *Wiggins* v. *McCleary*, 49 N. Y. 346; *Wyman* v. *New York*, 11 Wend. 487; *Livingston* v. *New York*, 8 id. 85; *In re Lewis St.*, 2 id. 472; *In re Furman St.*, Id. 649; *In re 39th St.*, 1 Hill, 191; *In re Brooklyn*, 73 N. Y. 179–185; *In re 32d St.*, 19 Wend. 127; *De Peyster* v. *Mali*, 27 Hun, 439–442; *Village of Olean* v. *Stuyher*, 135 N. Y. 341; *Lord* v. *Atkins*, 138 id. 184–191; *Speir* v. *Town of New Utrecht*, 121 id. 420–429.) The burden is upon the appellants to show "no dedication." (*In re City of Brooklyn*, 73 N. Y. 179–185.) It is unjust to burden the grantees of Thomas Hunt and his executors with the assessment which represents a substantial award. They purchased lands presumably at an enhanced value because located upon a proposed street. (Elliott on Roads & Streets, 119; *In re 67th St.*, 60 How. Pr. 275.)

O'BRIEN, J. The municipal authorities of Brooklyn instituted proceedings under chapter 365 of the Laws of 1889, as amended by chapter 452 of the Laws of 1890, to acquire title to lands for street purposes within the lines of Fifty-first street between Third and Fourth avenues as laid out upon the commissioners' map. This land formerly belonged to Thomas. Hunt, who died in the year 1878, leaving a will, and his executor claimed substantial damages for the taking of the

land, but the commissioners of appraisal awarded only nominal damages. The court at Special Term refused to confirm the report of the commissioners and it was set aside, but the General Term reversed the order and confirmed the report, and the executor of Hunt has appealed from the order of reversal to this court. Hunt purchased the lands in question for farming purposes as early as 1834. In 1835 or 1836 commissioners, appointed pursuant to the provisions of chapter 132 of the Laws of 1835, made and filed a map showing the location of the city streets, and the lines of Fifty-first street, as shown upon this map, include the lands now sought to be acquired. The street, however, was never actually opened or regulated. In 1851 Hunt conveyed the adjoining lands by deed under the following description and reservation :

"Beginning at the northeast corner of Third avenue and Fifty-first street ; running thence northerly along the line of said avenue to lands of Calvin T. Spear ; thence east along the lands last mentioned 740 feet to the centre of Fourth avenue ; thence south along the centre of Fourth avenue 100 feet to the northerly line of Fifty-first street 740 feet to the place of beginning," and contained the following clause : " Not intending hereby to convey to the party of the second part any right, title or interest of, in or to the land adjoining the said premises, and forming a part of Fifty-first street."

In 1864 the department of assessment of the city made and filed a map of the 8th ward, in which the lands in question are located, for the purpose of assessment, and the lands are there laid out, and 51st street appears substantially as in the map of 1835. Since this map was filed no assessment was made or tax levied upon that part of the lands of Hunt embraced within the lines of Fifty-first street by the city or county. After the death of Hunt his executor, in June, 1879, filed a map of the lands, laying them off in blocks, lots and streets corresponding to the commissioners' map. There was indorsed upon this map, however, a notice to the effect that the streets and avenues thereon designated were for the purposes of description and reference only, and it was not intended

to dedicate any of the lands lying within the lines of the streets and avenues to public use as such, or for any other purpose. Afterwards the executor conveyed lots, bounding them upon the street, to other parties, in which the lands in front of the lots so conveyed and within the street lines were in terms included. The question is whether the executor of Hunt was under these circumstances entitled, as matter of law, to more than nominal damages for the lands taken, the title to which still remained in him, and included within the lines of Fifty-first street on the maps mentioned. The application by the city, to appropriate the land to the purposes of a street, must be regarded as an admission that it had not been completely dedicated for that purpose before by the owner. There can be no doubt, however, that the owner intended to and did devote the land to use as a street, at least as between himself and his grantees who purchased lots bounded upon the street. They acquired an easement in the strip of land for use as a highway in order to have access to and from the lots purchased. They were entitled to have it kept open as a street for their benefit, and that thereafter the owner held the title incumbered by an easement for the benefit of the grantees of the lots which he had sold, and it was subject to that easement when this application was made. The rights which the several grantees of lots on both sides of this strip of land thus acquired impressed upon it all the characteristics of a public street, though it may not have been completely dedicated by the owner to that purpose, or accepted by the public authorities as a highway. This servitude thus impressed upon the land could not be extinguished except with the concurrence and by the united act of every person who owned a lot bounded by the street. The commissioners, therefore, could only award the owner the value of the public easement proposed to be taken, deducting therefrom the value of the private easement which already incumbered the property, and we have held that in such cases the owner's damages are nominal only as the added burden is itself but technical and nominal. (*In re Village of Olean v. Steyner*, 135 N. Y. 341.)

The principle upon which the general public right to the use of the land as a highway is acquired in such cases, without the payment of substantial compensation to the owner, was stated by Judge FINCH in the case just cited in these words: "The real burden is in no manner increased by absorbing the private in the public right, or substituting the latter in the room and stead of the former, since as burdens on the land they are substantially identical." The nature of the private easement and the damage to the owner by converting it into a public one are illustrated and explained by other cases. (*In re City of Brooklyn,* 73 N. Y. 184; *Lord v. Atkins,* 138 id. 184; *Cunningham v. Fitzgerald,* Id. 165; *Bissell v. N. Y. C. R. R. Co.,* 23 id. 63; *In re Eleventh Avenue,* 81 id. 446; *White's Bank of Buffalo v. Nichols,* 64 id. 73; *Wiggins v. McCleary,* 49 id. 346.) It follows, I think, from principles thus established that the executor of Hunt held the title to the land sought to be acquired by the city subject to an easement in favor of a part of the inhabitants on the line of the street, and its appropriation as a highway for the whole public, with the attendant duty and obligation to keep it in repair, safe and suitable for public use, entitled him to nothing more than nominal damages.

The order appealed from should, therefore, be affirmed, with costs.

All concur.

Order affirmed.