(96 Misc. Rep. 18)

### PEOPLE v. JOHN H. IRELAND REALTY CO.

(Supreme Court, Special Term, Kings County. June, 1916.)

1. STATUTES ⚖➙123(7)—SUBJECTS AND TITLES—EXPRESSION OF SUBJECT IN TITLE.

   Laws 1872, c. 331, authorizing the town survey commissioners of Kings county to determine and designate on maps to be filed by them the bulkhead and pierhead lines which are to form the termination of the streets and avenues laid out by them along the water front of the district under their jurisdiction, is not within the subject expressed by the title to Laws 1869, c. 670, "An act for the appointment of commissioners to lay out a plan for roads and streets in the towns of Kings county," to which the act of 1872 is supplementary, and is violative of Const. art. 3, § 16, providing that no private or local bill shall embrace more than one subject, which shall be expressed in the title.

   [Ed. Note.—For other cases, see Statutes, Cent. Dig. § 182; Dec. Dig. ⚖➙123(7).]

2. NAVIGABLE WATERS ⚖➙37(1)—LANDS OF STATE—"EXTERIOR WATER LINE."

   A bulkhead line established under Laws 1872, c. 331, which is unconstitutional, is not an "exterior water line" within Public Lands Law (Consol. Laws, c. 46) § 75, providing that the commissioners of the land office shall not make any grant beyond any permanent exterior water line established by law.

   [Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 201, 202; Dec. Dig. ⚖➙37(1); Public Lands, Cent. Dig. § 35.]

Action by the People under Code Civil Procedure, § 1957, against the John H. Ireland Realty Company, to set aside letters patent. Complaint dismissed.

Egburt E. Woodbury, Atty. Gen., and Robert P. Beyer, Deputy Atty. Gen. (E. J. Freedman, of New York City, and J. J. Mead, of Brooklyn, of counsel), for the People.

Coombs & Wilson, of Brooklyn (Robt. H. Wilson, of Brooklyn, of counsel), for defendant.

JAYCOX, J. On July 14, 1896, the commissioners of the land office made a grant of land under water in Jamaica Bay to the defendant's predecessors in title. By section 75 of the Public Lands Law it is provided that the commissioners of the land office may make such grants of land, but that the same shall not be granted "beyond any permanent exterior water line established by law." This limitation upon the powers of the commissioners of the land office was in effect at the time of the grant to the defendant's predecessors in title. This

action is brought under section 1957 of the Code of Civil Procedure to set aside said letters patent, on the ground that they were granted in ignorance of a material fact and through mistake.

The contention of the plaintiff is that a permanent exterior water line had been established by law, prior to the making of the grant in question, and that the property described in the grant in question extended beyond said permanent exterior water line, and the plaintiff therefore seeks in this action to vacate and annul said letters patent in so far as they purport to convey lands under water beyond the line which the plaintiff claims to be the permanent exterior water line.

The primary question in the action, therefore, is as to whether any permanent exterior line has been established by law or not. Under chapter 670 of the Laws of 1869, commissioners were appointed to lay out streets and roads in the towns of New Lots, Flatbush, Flatlands, New Utrecht and Gravesend. This act was entitled as follows:

"An act for the appointment of commissioners to lay out a plan for roads and streets in the towns of Kings county."

The only subject treated in this act is laying out streets and roads in said towns, and the commissioners are authorized to do nothing else. In 1872, by chapter 331 of the Laws of that year, the Legislature attempted to supplement the act first above referred to. This act was entitled:

"An act supplemental to an act entitled: 'An act for the appointment of commissioners to lay out a plan for roads and streets in the towns of Kings county,' passed May 7th, 1869."

This act made further provisions with reference to streets and roads, and contained the following provision:

"§ 3. The said commissioners are hereby authorized and empowered to determine and designate on the maps to be filed by them the bulkhead and pier lines which are to form the termination of the streets and avenues adopted and laid out by them along the water front of the district under their jurisdiction, on Gravesend and Jamaica Bays; and they are also authorized and empowered to lay out and map interior basin and bulkhead lines on the swamps and low lands of the said district; and such pier, bulkhead and basin lines shall thereupon become a part of the general plan of said district in like manner with the lines of streets and avenues."

Chapter 581 of the Laws of 1874 provided for the preservation of the maps and monuments prepared by said commissioners. This act was entitled:

"An act in relation to the town survey commissioners of Kings county, and for the preservation of the maps and monuments prepared and established by them."

The commissioners proceeded under these acts and laid out streets and roads in the various towns as therein provided, and also laid out a bulkhead line and pierhead line in Gravesend Bay and a bulkhead line in a part of Jamaica Bay. A pierhead line was not laid out in Jamaica Bay and in parts of Jamaica Bay no bulkhead line was

laid out. At the point where the premises granted by the letters patent in question here is situated a bulkhead line, but no pierhead line, was laid out. It is this bulkhead line which the plaintiff claims is a permanent exterior water line established by law.

[1] Whether this line in question is established by law or not depends upon the validity of chapter 331 of the Laws of 1872, which authorized and empowered the commissioners to determine and designate on the maps to be filed by them the bulkhead and pierhead lines which are to form the termination of the streets and avenues adopted and laid out by them along the water front. Article 3, § 16, of the Constitution of the state of New York provides as follows:

"No private or local bill, which may be passed by the Legislature, shall embrace more than one subject, and that shall be expressed in the title."

The act in question relates to but one county in the state and is therefore a local act. People ex rel. McConvill v. Hills, 35 N. Y. 449; People v. O'Brien, 38 N. Y. 193; Matter of Henneberger, 155 N. Y. 420, 50 N. E. 61, 42 L. R. A. 132; Ferguson v. Ross, 126 N. Y. 459, 27 N. E. 954. The original act mentioned but one subject in its title, and that is the appointment of commissioners to lay out a plan for roads and streets in the towns in question. The subject of that act, therefore, was the laying out of streets and roads in the county of Kings. It embraced but one subject, and that subject was expressed in its title. When, however, the Legislature attempted to supplement this act, it authorized and empowered the commissioners to fix and determine bulkhead and pierhead lines. This raises the question as to whether or not this was the same subject treated of in the previous act and, if so, was that subject expressed in the title? The question involved is as to whether the additional powers and duties mentioned in chapter 331 of the Laws of 1872 are incidental to the main purpose and subject as expressed in the title of chapter 670 of the Laws of 1869.

"An act may include such provisions as are incidental to its main purpose and subject as expressed in the title of the act, unless such incidental provisions are so foreign to its main purpose and subject as to mislead and deceive, or tend to mislead and deceive, the members of the Legislature or the public." People ex rel. Olin v. Hennessy, 206 N. Y. 33, 99 N. E. 87.

In Economic P. & C. Co. v. City of Buffalo, 195 N. Y. 286, 88 N. E. 389, the cases upon this subject are collated, and the expressions of the court in relation thereto quoted. As a result of all of these cases, I think the test in this case is as to whether the provisions added by the later statute are germane to the subject expressed in the title of the original act. In some of the cases, the test has been as to whether one reading a proposed bill with the title in his mind would be surprised to find in it the provisions in question. Applying that test to the present legislation, I think any one would be surprised to find in an act providing for the laying out of streets and highways a provision authorizing the commissioners to fix bulkhead and pierhead lines. The act evidently was drawn with this possible criticism in mind, and by connecting the bulkhead and pierhead lines with the termination of

the streets, it was sought to make the laying out of the bulkhead and pierhead lines incidental to the laying out of the streets. This provision was not essential to the performance of the duties imposed upon the commissioners. They could not, by fixing any pierhead or bulkhead lines fix a termination or end of any street which led to high-water mark upon navigable waters. A perpetual right of way exists in favor of the public beyond the terminus of a street at the high-water line of navigable tidal waters and those waters. Matter of City of New York, 216 N. Y. 67–75, 110 N. E. 176. In this case it is said:

"The public had a right to pass directly from the street to the sound and from the sound to the street—a right of passage over the place where the land highway and navigable waters meet. Whenever under lawful ownership or authority the waters bounding the end of a street are displaced by earth or other filling, or a wharf or structure is built out from the street into the waters, the easement of the street is extended by operation of law to the end of the filling or the structure. People v. Lambier, 5 Denio, 9 [47 Am. Dec. 273]; Knickerbocker Ice Co. v. Forty-Second St. & G. St. F. R. R. Co., 176 N. Y. 408 [68 N. E. 864]; Matter of City of Brooklyn, 73 N. Y. 179; City of Buffalo v. D., L. & W. R. R. Co., 190 N. Y. 84 [82 N. E. 513, 16 L. R. A. (N. S.) 506]."

See, also, Hard v. Blue Points Co., 170 App. Div. 524, 156 N. Y. Supp. 465.

The fixing of the bulkhead and pierhead lines would therefore have no effect upon the streets and highways which terminate at high-water mark, and those streets and highways without any provision as to pierhead and bulkhead lines would, ipso facto, extend to the water, no matter if piers, wharves, or bulkheads were built across the end of them. The act in question did not restrict the commissioners to the fixing of pier and bulkhead lines across the ends of streets, but it also directed that such pier and bulkhead lines should be fixed between streets. I am unable to see that the fixing of bulkhead and pierhead lines between such streets and highways has any connection with or is in any way incidental to the laying out of such streets and highways. The act in question also authorizes and empowers the commissioners to lay out and map interior basins and bulkhead lines on the swamps and lowlands of said district. This, in my estimation, is even more remote from the original subject of legislation. The act in question is, in my estimation, rightly subject to the criticism that it embraces more than one subject. If, however, for the sake of argument, it be conceded that but one subject is embraced within the act in question, I think it violates the other provision of the constitutional provision in question, and that is that the subject is not expressed in the title. The purpose of this provision has been stated to be:

"That neither the members of the Legislature nor the public should be misled by the title." Sun Mutual Ins. Co. v. Mayor, 8 N. Y. 241–252.

I think it would be a very astute member of the Legislature who would look for a provision directing the establishment of bulkhead and pierhead lines in an act in relation to laying out roads and streets in the towns of Kings county. It would be still more surprising if any property owner on Jamaica Bay was able to see in such a title a warn-

ing that a pierhead or bulkhead line, limiting his rights, was about to be established in front of his property.

[2] The act under which the line which plaintiff claims an exterior water line was established provides for the fixing of a bulkhead line and a pierhead line. As at the location covered by the grant in question only a bulkhead line was laid out, the court is called upon to determine whether the bulkhead line so established is an exterior water line or not. The act itself recognizes a difference between these lines, and other acts relating to the same subject also recognize the same difference. Laws of 1857, c. 763. The decisions of the courts also recognize this difference. People v. N. Y. & Staten Island Ferry Co., 7 Hun, 105. The commissioners themselves also recognized this distinction. They fixed both lines in some places. In those places it is undisputed that the pierhead line became the exterior water line. It is claimed by the plaintiff that in those places where no pierhead line was established the bulkhead line was thereby established as the exterior water line. I think this does not necessarily follow. In the first place I think that such a holding would go far toward justifying the conclusion that in those places where neither pierhead nor bulkhead lines are laid down on the map it is tantamount to fixing the shore itself as the limit of grants by the commissioners of the land office. Many situations can be imagined where it would be unwise to permit either bulkheads or piers below high-water mark. The waterway may be so narrow as to render it unwise to encroach upon it at all. Under the circumstances I think it is not the court's duty to draw any inference from the commissioners' failure to designate a pierhead line. It is as fair to assume that they left it to future events to determine where the pierhead line should be as to assume that the line designated as a bulkhead line was not in fact a bulkhead line alone, but was also the pierhead line. The omission of a pierhead line might well have been intentional—the commissioners may have been of the opinion that after commerce developed in that vicinity the location and character of the piers best adapted to its accommodation could be determined most advantageously. The act of 1857 (chapter 763) is one of the early acts upon the subject, and in it the "exterior" line is fixed as the "pier line." I think, in subsequent legislation upon the same subject, when the same term "exterior" water line is used, it must be given the same meaning. This act has been the subject of much litigation, and to its terms a fixed and certain meaning has been given. It was before the courts as recently as Matter of the City of New York, 217 N. Y. 1, 111 N. E. 256. At page 10 of the opinion of the court in that matter the distinction between bulkhead lines and pierhead lines is shown, and the latter are the "exterior" lines. The purpose of the bulkhead line as the limit of solid filling is pointed out at pages 13 and 17.

The act empowering the commissioners to lay out bulkhead lines violates the constitutional provision above quoted. Under it the commissioners laid out no exterior water line at the place where the premises in question are situated. The defendant is therefore entitled to a dismissal of the complaint, with costs.

Ordered accordingly.