In the Matter of the VILLAGE OF OLEAN, Respondent, *v.* JOHN J. STEYNER et al., Appellants.

A municipality by commencing proceedings under its charter to acquire land for the purposes of a street admits the landowner's right, and it may not claim in such proceedings that the land has been dedicated by the owner to the public use as a highway.

In such proceedings, commenced by the trustees of a village, it appeared that the landowners had acquired title under deeds which recognized as a street the land sought to be acquired as laid out upon a map made by a former owner, who sold and conveyed by descriptions referring to said map, and that they had conveyed lots to different parties, by descriptions referring to that map and bounding the lots by said street as laid out on said map. *Held*, that the grantees of the original owner and the subsequent grantees in turn acquired an easement in the strip so designated as a street, and all the parties having recognized the map and bought and sold with reference to it, they had the right to have the strip kept open to its full width, after the manner and with the characteristics of a street and so, that said owners were only entitled to nominal damages.

It appeared that the contesting landowners had fenced in, planted and adorned the strip, and one of them had a house upon it; they claimed that the easement was extinguished by adverse possession. *Held*, that an adverse possession could not be founded upon these acts, because of the presumption flowing from the acceptance by them of their deeds and from the conveyances made by them; that they entered in subordination to the servitude imposed, and occupied only temporarily until the use of the easement should be required.

*In re City of Brooklyn* (73 N. Y. 184), distinguished.

(Argued June 15, 1892; decided October 4, 1892.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made April 16, 1891, which affirmed an order of the county judge of Cattaraugus county confirming the report of commissioners appointed to

assess damages in a proceeding to acquire lands for street pur-
poses in the village of Olean.

The facts, so far as material, are stated in the opinion.

*Frank Rumsey* for appellant.   There was never a dedica-
tion by the owners of the lands in controversy for a public
street.  (48 Hun, 488; *N. F. S. B. Co.* v. *Bachman*, 66 N.
Y. 261.)   A dedication of the *locus in quo* for a public street
would be ineffectual if revoked before acceptance by the pub-
lic authorities.  (*Holdane* v. *Trustees, etc.*, 21 N. Y. 474; 48
Hun, 488.)   There was never any acceptance of a dedication
of the land by the public authorities.  (*In re Rhinelander*, 68
N. Y. 105.)   The commissioners take the position that in case
the land was not dedicated and accepted the owners are not
entitled to compensation, for the reason that it is incumbered
by private easements or rights of way over it by owners abut-
ting on this paper Fifth street.   This claim is without sub-
stance.  (*In re Eleventh Avenue*, 81 N. Y. 436; *Brill* v.
*Brill*, 108 id. 511; *Corwin* v. *Corwin*, 24 Hun, 147.)   By
the deeds from Sewells to Savage of the blocks on either side
of this strip, and by the deed from Savage to Steyner in like
manner, both Savage and Steyner acquired title to the strip,
subject to any rights of the public in the strip as a public
street, and subject to any easements which prior grantors from
same common grantor may have in that part last deeded.   (*F.
Ins. Co.* v. *Stevens*, 87 N. Y. 287.)   This proceeding is proper
only when it is conceded by the petitioner or municipality,
that the lands or easements sought are owned by the respond-
ents, and it is desired to fix and assess the damages for the
taking of such lands or easements, and is not a proper pro-
ceeding in which to test or try the title of the parties to the
lands or easements.  (*In re City of Yonkers*, 117 N. Y. 572;
Laws of 1882, chap. 110.)   The statute limiting an appeal and
making the order of the county judge final and conclusive
refers to and affects only the question of the amount of dam-
ages, and is not intended to prevent a review of legal errors.
(*In re P. P. & C. I. R. R. Co.*, 20 Hun, 184; *N. Y. C. R.*

*R. Co.* v. *Marvin,* 11 N. Y. 278; *In re Canal and Walker Streets,* 12 id. 411; *Starr* v. *Trustees, etc.,* 6 Wend. 564; *Staples* v. *Fairchild,* 3 N. Y. 41; Code Civ. Pro. § 190, subd. 3.)

*Fred. L. Eaton* for respondent.

Finch, J.   A motion is made to dismiss this appeal founded upon the provision of the charter of Olean, which makes the order of the commissioners when approved by the county judge final. We do not decide that question since we are all agreed that the judgment should be affirmed, and prefer to dispose of the case on its merits.

I do not see how the village of Olean can raise the question of a dedication to the public use in this proceeding, for its very existence and prosecution necessarily involves an admission of the landowner's right, and an inquiry into his damages resulting from a necessary taking of that right. If Fifth street was in truth dedicated to the public use, and that dedication accepted by the municipal authorities, the commissioners were at liberty to open the street and occupy and maintain it without any proceeding whatever, because simply engaged in regulating and improving a street belonging as such to the village. But the municipality waived any such claim, if it existed, by proceeding under the charter to condemn the landowner's right, and to assess his damages for what was proposed to be taken from him. Manifestly, the village conceded his right when it instituted a proceeding to take it away, and under a provision of the charter having no application except where there is an owner other than the village and whose title is to be divested. To say that there is not such owner, and that the easement sought to be condemned belongs to the municipal corporation by the act of the owner, is to deprive the proceeding of all foundation and invite its dismissal for that reason. The order cannot be sustained on such ground, for the charter does not authorize a taking of the fee, but only an easement for a village street, and precisely that easement had

already passed if there had been a dedication and acceptance, and the municipality finds itself in the awkward position of seeking to condemn its own property for its own use. The question thus necessarily becomes one, not of condemnation, but of title, and ends in the inquiry whether the village owns or does not own the easement, and that question cannot be raised or tried in a proceeding which assumes the landowner's conceded right, and is framed solely to ascertain his just compensation for parting with it.

But assuming that there was no dedication of Fifth street to the public use, and that the proceeding instituted was, therefore, properly commenced and had a substantial purpose to accomplish, it does not necessarily follow that the commissioners made an error of law in awarding nominal instead of substantial damages. By the village charter it was their duty to award such damages only after deducting therefrom the benefit to the owner from the opening of the street, and it was proved that both of the owners who are defending had accepted deeds which recognized Fifth street as laid out upon the Gosseline map, and had conveyed to other parties by a description referring to that map and bounding the parcels by Fifth street as thereon delineated. The whole area of land in question was formerly owned by Mrs. Sewell. The Gosseline map was made in 1836 when speculation in real estate reached its highest tide and almost every owner was insane with expectation. That map spread the village over Mrs. Sewell's land, which was wholly unimproved, and covered by the natural forest, and which it has taken the village fifty years to reach and need. After Mrs. Sewell's death her executors conveyed to Simeon Savage eight lots on block forty-one as laid out on the Gosseline map. This deed was in 1862. Four years later the heirs at law of Mrs. Sewell conveyed another large portion of the property to Savage, and in 1869 the substantial balance to Blakeslee. The grantees of the latter and those of Savage, with the exception of Steyner and Mrs. Dilks, have joined in the request to open the street and released all claims for damages. The lots conveyed to Steyner were deeded to his

grantor, Savage, by the heirs at law of Mrs. Sewell, and the question raised by the appellants of the power of her executor to convey, and especially to impose a servitude upon the land, does not concern Steyner, and only in small degree Mrs. Dilks, most of whose lots also came from the heirs at law. All these conveyances recognized and adopted the Gosseline map, and described the premises granted as the lots and blocks delineated on that map, which thus became an essential element of the description. In addition to this characteristic of the conveyances to Steyner and Mrs. Dilks it appears that there were deeds from them which equally recognized the map and the existence of Fifth street. In 1885 Steyner deeded to Martha Black part of lots two and four in block fifty-five, according to the Gosseline map, commencing at the intersection of the west line of Fifth street with the south line of Sullivan street, and further bounding the premises by the west line of Fifth street. In 1880 Mrs. Dilks conveyed to Anna Curtis the east part of block forty, as distinguished on the Gosseline map; the further description showing a frontage on Fifth street to the east and on Sullivan street to the south. It seems to be quite clear that the grantees of the Sewell estate and their grantees in turn acquired an easement in the strip designated as Fifth street and appurtenant to their property. All the parties have recognized the Gosseline map, and bought and sold with reference to it, and enough is shown to establish in them a right to have the strip kept open to its full width after the manner and with the characteristics of a village street. (*Bissell* v. *N. Y. Cent. R. R. Co.*, 23 N. Y. 63 ; *In the Matter of Opening Eleventh Avenue*, 81 id. 446.) In the first of these cases the map was made by the grantor, but in the second by the city authorities, and then recognized and adopted by the grantor for the purposes of the conveyance. In both cases it was held that the grantees took an easement in the projected street, and were entitled to have it kept open for public use, although it did not thereby become a highway until accepted as such by the public authorities ; and the same doctrine is asserted broadly and at length in *White's Bank*

*of Buffalo* v. *Nichols* (64 N. Y. 73). This right accruing against the grantors gave similar rights to all the grantees, who, as between themselves, could extinguish the servitude only by the united act of all. And the two defendants here made the incumbrance much more certain by themselves granting parcels according to the Gosseline map, and more or less distinctly recognizing the projected and intended Fifth street. Not to open it, and barring the public from it, would operate as a fraud upon the grantees, who must be presumed to have bought and paid for the appurtenant convenience and benefit.

The principal answer made by the appellants is that the easement was extinguished by an adverse possession of Steyner and Mrs. Dilks. The former fenced in the strip and planted and adorned it, and the latter owned a house upon it. These acts might found an adverse possession but for the presumption flowing from the acceptance by the appellants of their deeds, and from the conveyances made by them, that they entered in subordination to the servitude imposed, and occupied in like manner and only temporarily until the use of the easement should be required. (*Smyles* v. *Hastings*, 22 N. Y. 217; *Bridges* v. *Wyckoff*, 67 id. 132.) That occupation was not necessarily adverse while no grantees needed or sought to use the easement, and must be regarded as temporary and in subordination to the existing right under which the entry was made, and which the appellants themselves recognized largely within the twenty years by their own conveyances.

The commissioners, therefore, could only award to the owners the value of the public easement taken, deducting therefrom the value of the private easement, which already incumbered the property. (*Matter of City of Brooklyn*, 73 N. Y. 184.) It is quite evident that the public right taken, deducting therefrom the value of the private easement, leaves only a nominal injury, because the added burden is itself but technical and nominal. The real burden is in no manner increased by absorbing the private in the public right, or substituting the latter in the room and stead of the former, since as bur-

dens on the land they are substantially identical. In the case of city streets, where under the statute the fee is taken, we have recently held that substantial damages should be awarded (*City of Buffalo* v. *Pratt*, 131 N. Y. 297), but here the fee is not taken, but an easement for a highway only, which is merely the equivalent of the private easement displaced. The change alters the control, but does not increase the burden. When to this is added the fact that the commissioners were required to personally examine the premises and take into account the benefits resulting from opening the street, it is apparent that we cannot say, as matter of law, that there were substantial damages, or that more than nominal damages should have been awarded.

The order should be affirmed, with costs.

All concur.

Order affirmed.