In the Matter of the Application of MARGARET A. HUNTER,
Respondent, to have Vacated an Assessment for the Con-
struction of a Sewer in Rawson and Third Streets, in the
City of Albany ; CITY OF ALBANY, Appellant.

1. MUNICIPAL CORPORATIONS — DEDICATION OF STREET — ACCEPTANCE
BY CITY AUTHORITIES.  The passage of an ordinance by a common coun-
cil, the members of which are by the city charter made commissioners of
highways, directing the construction of a sewer through land which
has been for many years tendered as a highway, calling it by the street
name by which it had been designated by the owner and known to the
public for years, will amount to an acceptance of the tender and an
adoption of the land as a public street and will terminate the right of
revocation.

2. ACTION OF CITY AUTHORITIES PRESUMED TO BE LAWFUL.  The
common council of a city by directing a sewer to be constructed through
land tendered as a street is presumed not to intend to do an illegal act or
to trespass upon land belonging to another, but to treat it as the land of
the city in trust for use as a street.

*Matter of Hunter*, 47 App. Div. 102, reversed.

(Submitted June 6, 1900;  decided June 22, 1900.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the third judicial department, entered Jan-
uary 16, 1900, reversing an order of Special Term denying
an application to vacate a local assessment and granting such
application.

During the year 1898 the city of Albany constructed a sewer
and assessed a portion of the expense upon premises owned by
Margaret A. Hunter, who instituted this proceeding to set the
assessment aside upon the ground that one of the streets, so
called, through which the sewer passed, was not a public high-
way but her private property.  Both parties conceded that
unless the strip of land called Rawson street was a public
street, the construction of the sewer therein was unauthorized,
and the assessment unwarranted.

The facts, as stated by the Special Term, are substantially
as follows : " The premises in dispute, together with consider-
able surrounding property, were purchased in 1861 by Andrew

R. Hunter, the husband of the petitioner, who died in 1893. In 1873 he caused a map of his property to be made, which was filed in the county clerk's office in 1877. This map shows a street called Rawson street, 70 feet in width, leading from Central avenue northerly to lands of the New York Central Railroad Company, crossing streets indicated upon the map as Hunter avenue, Second street, Third street and Lumber street, the latter street being now known as Livingston avenue.

The evidence shows that after the making of this map Mr. Hunter conveyed several lots, described with reference to the map and with reference to Rawson street as there laid down. In 1875 the city purchased from Mr. Hunter a considerable tract of land for a public reservoir, and upon the construction of the reservoir the portion of Rawson street, as indicated upon the map, lying between Hunter avenue and Third street, was closed, leaving, however, those portions of Rawson street shown upon the map between Central and Hunter avenues and between Third and Lumber streets the same as before. It also appears that from 1875 to 1890 the assessors of the city made their assessments of the property of Mr. Hunter on Rawson street with reference to the lots and to that street as laid down upon the map, and that during those years he was not assessed and did not pay any tax upon the lands designated as Rawson street thereon.

In July, 1889, Mr. Hunter caused a new map of a portion of his property to be made, showing an open way 66 feet in width leading from Third street to Livingston avenue, but not designated thereon as a street or by any name, but showing this way as leading at right angles from Livingston avenue instead of from Third street, as Rawson street had been indicated upon the map of 1873. The southerly end of this open way at Third street upon the map of 1889 was very nearly in the same place as was Rawson street upon the map of 1873, at that location, but the northerly end of this open way, at Livingston avenue, was carried a little more than its width farther west than the place indicated as Rawson street on the map of 1873. There is no proof that the map of 1889 was ever filed

in the county clerk's office, but the testimony shows that sub-
sequent to its date, and down to the death of Mr. Hunter, the
assessments of this property were changed to correspond with
the new map, and that he paid his assessments so made.
*   *   *   These changed assessments did not include, and
Mr. Hunter did not thereafter pay, any tax upon the open
way or street shown upon the map of 1889.   Since Mr.
Hunter's death the assessments have continued in the same
way against the petitioner, and she has received a like exemp-
tion of this open way from taxation.   In 1890 Mr. Hunter and
his wife conveyed the lot on the southwesterly corner of Liv-
ingston avenue and this open way, as appearing upon the map
of 1889, and one-half of the lot next adjoining thereto on the
south, as shown on such map, to Robert Burns, and described
such premises as being bounded 'east by the west line of
Rawson street.'   *   *   *   The evidence shows the use of
the open way, indicated upon the map of 1889, by pedestrians
and vehicles as a public street for from ten to fifteen years
past, during which time it has been fenced upon each side
along lines corresponding with those appearing upon the map.
During this time it has been open to, and in fact used very
largely by, the public in passing between Third street and
Livingston avenue, and has furnished the only avenue com-
municating with those streets between Colby street and New
York Central avenue.   It is also shown that Rawson street
has been known in that neighborhood as a public street for
twenty-five years past.   The photographs in evidence show a
well-beaten road or carriageway over this open way of the
same general character as that of the connecting streets.   The
common council in June, 1871, adopted a resolution that the
next street west of New York Central avenue, 'running from
Central avenue north to Lumber street, be called Rawson
street.'   It also passed a resolution in December, 1879, direct-
ing the street commissioner to 'cause a cross-walk to be placed
on Rawson street at Central avenue.'"

It does not appear that any work was ever done on Rawson
street, as laid out on the map of 1889, under the sanction of

the city authorities, but on the 16th of May, 1898, the following ordinance was adopted by the common council and two days later was approved by the mayor : " A law to authorize the construction and laying of a vitrified stone-ware pipe sewer from the brick sewer constructed by the N. Y. C. & H. R. R. R. Co. southerly along lands belonging to said railroad company and to others, to Livingston avenue, and thence southerly *along the center of Rawson street* to the center of Third street, and thence east along the center of Third street to a point about fifty feet west of New York Central avenue, and also west from *the center line of Rawson street* along the center of Third street to the east line of Colby street.

The city of Albany in common council convened ordains as follows : It is hereby ordered and directed that a vitrified pipe sewer be constructed and laid from the culvert lying north of and adjacent to the southerly tracks of the New York Central & Hudson River Railroad Company, now used for passenger trains, southerly through lands of said railroad company   *   *   *   to Livingston avenue; thence *southerly along Rawson street,* as declared by ordinance to be a public street in the city of Albany, to the center of Third street; thence, dividing, the sewer is to be laid both east and west, the easterly portion running through the center of Third street to a point about fifty feet west of the west line of New York Central avenue, and the westerly portion running through the center of Third street to the east line of Colby street; provided, however, that the portion of said sewer constructed underneath the tracks of the New York Central & Hudson River Railroad Company shall consist of an iron pipe of the same inside dimensions as that portion of the sewer immediately adjoining on the north ; and provided further, that the said sewer may, if the proper permission be obtained, be connected with and have its outlet in a certain vitrified pipe sewer or drain now extending through said railroad lands from said Patroon creek culvert in a southerly direction to a point at or near the southerly line of said railroad lands near their intersection with *the continuation of Rawson street ;* and

69

that such vitrified pipe sewer be constructed and laid in the following manner, namely : To be circular in shape and fifteen inches in interior diameter in .the clear, *for that portion in Rawson street and its northerly continuation*, and to be twelve inches in interior diameter in the clear for that portion lying in Third street   *   *   *."

The rest of the ordinance, which related wholly to the sewer in question and directed it to be built through the lands in question, is not material.   On the same day that this ordinance was adopted one of the aldermen gave notice that he would at the next regular meeting of the common council move the passage of an " ordinance accepting Rawson street," and such an ordinance was adopted on the 6th of June following.   In the meantime, however, and on June 4th, 1898, the respondent, who had succeeded to the rights of Andrew R. Hunter in the lands in question and the adjoining lands belonging to him at the time of his death, had caused Rawson street, so called, to be closed by fences at either end.   These fences remained until the 7th of July, when they were removed under the direction of the common council.

The Special Term dismissed the proceeding upon the ground that Rawson street had become a public highway by dedication, but upon appeal the Appellate Division held that the erection of the fences on the 4th of June revoked the dedication.

*Arthur L. Andrews* for appellant.   Rawson street between Third street and Livingston avenue was dedicated to the public use as a street more than twenty-five years prior to the action of the common council of the city of Albany directing the construction and laying of the sewer therein of which the petitioner complains. (*City of Cohoes* v. *D. & H. C. Co.*, 134 N. Y. 402; *Flack* v. *Vil. of Green Island*, 122 N. Y. 107; *Hunter* v. *Trustees of Sandy Hill*, 6 Hill, 407.) At the time of the construction of the sewer the dedication was irrevocable.   (24 Am. & Eng. Ency. of Law, 6 ; Elliott on Roads & Streets, 89, 111, 119 ; *Learned* v. *Learned*, 11

Metc. 421; *Hobbs* v. *Levy*, 19 Pick. 405; *Prouty* v. *Bell*, 42 Vt. 72; *Coffin* v. *Vil. of Plymouth*, 49 N. H. 173; *Howard* v. *City*, 47 Ark. 431.) There was an acceptance by the city of the dedication of Rawson street and also a prescriptive right thereto acquired by the public therein for highway purposes by reason of the user thereof for a period of more than twenty years. (*Flack* v. *Vil. of Green Island*, 122 N. Y. 107; Dillon on Mun. Corp. [4th ed.] §§ 637, 638.) There was a formal acceptance of the tract of land described in the petition by metes and bounds, as a street, in accordance with the provisions of the chater of the city. (L. 1883, ch. 298, tit. 3, § 29; *Strong* v. *City of Brooklyn*, 68 N. Y. 16; *Bridges* v. *Wyckoff*, 67 N. Y. 130.)

*W. Frothingham* for respondent. There has never been an acceptance of any dedication of the so-called Rawson street by the city. (*Lee* v. *Lee*, 27 Hun, 1; *De Peyster* v. *Mali*, 27 Hun, 439.)

VANN, J. The undisputed evidence shows a clear intention on the part of Hunter and his successor in title to dedicate the land in question to the use of the public as a highway. He did not simply suffer it to lie open, unfenced and undefined, but by unequivocal acts he made a tender of dedication of land, fenced as a street, laid down upon his own map as a street, and in constant use by the general public as a street. After he prepared the second map, and on the 10th of June, 1890, he conveyed abutting lots, bounding them on one side " by the west line of Rawson street," thus designating the open way on the map of 1889 as a street with that name. When the petitioner succeeded to his rights she did not attempt to revoke the dedication, but allowed matters to remain for five years as her husband had left them.

Assuming, but not deciding, that the power of revocation existed when the ordinance of May 16th, 1898, went into effect, no attempt had then been made to exercise the right. The tender of dedication was still open to acceptance by the

city, and if that ordinance amounted to an acceptance, the land forthwith became a public highway. As was said by this court in *Cook* v. *Harris* (61 N. Y. 448, 454): "Dedication and acceptance may be proved by the acts of the parties, and the circumstances of the case. The owner's acts and declarations should be such as to manifest an intention to abandon or devote his property to the specific public use. In the case of a highway, the public must accept the highway, and before such acceptance the dedication may be revoked. Such acceptance may be proved by long public use, or by the positive acts of the public authorities in recognizing and adopting the highway. No particular length of time is essential to make a dedication valid and irrevocable. The dedication and acceptance may both concur on a single day." (See, also, 24 Am. & Eng. Encyc. 6 ; Elliott on Roads and Streets, 89, 111 ; Dillon on Munic. Corp. [4th ed.] §§ 637, 638.)

By the charter of the city of Albany, the members of the common council are made commissioners of highways. (L. 1883, ch. 298, title 3, § 14.) Any action by the common council showing a clear intention to recognize the strip of land in question as a street was an acceptance of it as a public highway. An ordinance directing the street to be graded, paved or put in proper condition for use by the public would have that effect. (*Flack* v. *Vil. of Green Island*, 122 N. Y. 107 ; *City of Cohoes* v. *D. & H. Canal Co.*, 134 N. Y. 402.) A resolution formally and in terms accepting the street was unnecessary, for any official act on the part of the common council which treated it as a street and showed an intention to adopt it as one of the public streets of the city would be sufficient.

The ordinance of May 16th directed the construction of a sewer through the strip of land under consideration, calling it Rawson street and treating it as a street the same as various other public streets in the neighborhood through or across which the sewer was to run. Twice in the title and three times in the body of the act it is referred to as Rawson street and recognized as a street the same as Third street, Colby

street and Livingston avenue. The presumption, always in favor of official action, is that the common council, by directing a sewer to be constructed through it, did not intend to do an illegal act or to trespass upon land belonging to another, but to treat it as the land of the city in trust for use as a street. The proper authorities by using it as a street accepted it as a street. The 'ordinance was as clear an assertion of authority over the land as a street as if it had directed the street commissioner to grade or pave it. The common council thus did an act which it had no right to do, unless it had accepted, or thereby accepted, the land as a street. If the ordinance had declared that the city accepted the strip of land already fenced, thrown open to and used by the public as a street for years, the intention would not have been more unequivocal than as shown by the direction to construct a sewer in it as a public street, and calling it by the name by which it had been known to the public for many years, for that action necessarily adopted it as a street. In effect the common council said "we order a sewer to be built through the following streets of the city of Albany, and among others, through Rawson street."

It is true that the ordinance alludes to Rawson street "as declared by ordinance to be a public street." This may have referred to an ordinance passed but not put in evidence, or it may have referred to an ordinance proposed for greater safety but not yet adopted. This does not detract from the necessary effect of the acts directed to be done by the ordinance in question, which involved the assertion of dominion over the land as a public highway. We think the ordinance was an acceptance of the street, and that upon its approval by the mayor, two days after its passage, Rawson street became a public highway, even if it had not become so before. We do not pass upon the effect of the first map prepared and filed by Mr. Hunter, his numerous conveyances of land with reference to it, the action of the city authorities in naming the street and constructing a crosswalk in it, the public user, the change in 1875 and the acquiescence of all concerned

therein. We place our decision upon the tender of dedication by Mr. Hunter in his lifetime, continued without interruption by the present owner for years after his death, and the acceptance of that tender, when still in full force, by the ordinance of May 16th, 1898. Without reference to the earlier history of the street, we think this tender and acceptance were sufficient of themselves, independent of any other fact, to make Rawson street a lawful and irrevocable highway. When the street thus came into existence the power to revoke the dedication was ended, and the attempt to exercise the power after acceptance by the city, through the erection of fences, was not a revocation but simply a trespass. The courts below do not appear to have considered the effect of the ordinance of May 16th, possibly because counsel presented no claim with reference to the subject, as none was presented before us. While we regret that we have not the advantage of their views upon the question, we feel clear that the ordinance had the effect of an acceptance by treating the land as already an existing street and adopting it as such.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in all courts.

PARKER, Ch. J., O'BRIEN, BARTLETT, HAIGHT and CULLEN JJ., concur; LANDON, J., not sitting.

Order reversed, etc.