## In re LAWRENCE STREET IN THE CITY OF NEW YORK.

(Supreme Court, Special Term, Queens County.    June 7, 1912.)

1. MUNICIPAL CORPORATIONS (§ 442*)—ACQUISITION OF LAND FOR STREET—ASSESSMENTS FOR BENEFITS—STIPULATIONS.

A stipulation between an owner, who ceded land to the city of New York for street purposes, and the city, reciting that the remaining land was to be exempt from assessments for benefits except its proportionate share of awards for buildings, made pursuant to Greater New York Char-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ter, §§ 980, 992, 994 (Laws 1901, c. 466), authorizing the · commissioners of estimate and assessment to make an assessment of the damage occurring in consequence of altering streets, and authorizing the city to agree with owners as to compensation and the sums to be paid by owners for the benefit of their remaining lands, etc., authorized an assessment on the remaining land of the owner for its proportionate share of any awards for damages to buildings caused by changes in the grade of the street.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1062; Dec. Dig. § 442.*]

2. BOUNDARIES (§ 20*)—STREETS—CONSTRUCTION.

A deed of land bounded on a street carries the title to the center of the street, in the absence of any description by metes and bounds, where the grantor owns to the center.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 123–130, 132; Dec. Dig. § 20.*]

3. MUNICIPAL CORPORATIONS (§ 455*)—ACQUISITION OF LAND FOR STREET PURPOSES—HEARING BEFORE COMMISSIONERS OF ESTIMATE AND ASSESSMENT.

An owner of land subject to assessment for benefits for the opening of a street must, in the absence of some sufficient excuse, appear personally before the clerk of the commissioners of estimate and assessment for examination as to his ownership and possession of the premises, and the freedom of the premises from incumbrances by way of leases, mortgages, judgments and other liens, or his proof of title will be insufficient.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1084–1093; Dec. Dig. § 455.*]

4. EMINENT DOMAIN (§ 127*)—ACQUISITION OF LAND FOR STREETS—DAMAGES.

Where land within the limits of a proposed street is burdened with easements of right of way, the owner, though entitled to a substantial award for damages for the taking of the land for a street, is not entitled to the full value of the land.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 348; Dec. Dig. § 127.*]

5. EASEMENTS (§ 17*)—WAYS—ESTABLISHMENT.

A map showing lots and streets, and sales of lots fronting on an unopened street with reference to the map, have no effect on other property not owned by owners of the property shown on the map, and do not create any easements of right of way over such other property.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 45–49; Dec. Dig. § 17.*]

6. EASEMENTS (§ 17*)—WAYS—ESTABLISHMENT.

A deed of land bounded on an unopened street is ineffectual to create private easements over the street without proof that the grantee had conveyed to others some part of the premises conveyed to him fronting on the street or other premises owned by him fronting on the street, and describing the property in such deeds as bounded by the street, or that the grantor or a prior common owner had conveyed other premises in the same block to others with reference to the street.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 45–49; Dec. Dig. § 17.*]

7. EASEMENTS (§ 17*)—WAYS—ESTABLISHMENT.

An unfiled map of lots and unopened streets is · ineffectual to create private easements of right of way without proof of conveyance of one or more lots or blocks with reference to the map or to the street thereon.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 45–49; Dec. Dig. § 17.*]

8. DEDICATION (§ 35*)—WAYS—ESTABLISHMENT.
   The commencement by a city of a proceeding to acquire a fee for a street is not an admission that there has been no dedication of an easement of a right of way to the public, but, to constitute a dedication of such easement, there must be an acceptance.
   [Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 68–71, 75, 76; Dec. Dig. § 35.*]

9. DEDICATION (§ 44*)—RIGHT OF WAY—ACCEPTANCE—EVIDENCE.
   Evidence of user *held* not to show an acceptance of a dedication of an easement of a right of way to the public.
   [Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 85–87; Dec. Dig. § 44.*]

10. EMINENT DOMAIN (§ 101*) — DAMAGES TO BUILDINGS FOR CHANGE OF GRADE OF PROPOSED STREET.
   Where the proper authorities had not legally established the grade of a street, and there was no use of the street as a highway for 20 years, an award for damages to buildings by reason of a change of the grade of the street was unauthorized.
   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 269, 270; Dec. Dig. § 101.*]

11. EMINENT DOMAIN (§ 127*)—AWARD—SUPPORT IN EVIDENCE.
   City maps for purposes of assessment cannot affect a dedication nor create private easements, and, in the absence of evidence showing that parcels sought to be taken for a street were burdened with easements, the commissioners could not base an award on the theory that such parcels were burdened with easements.
   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 348; Dec. Dig. § 127.*]

Application of the City of New York for the acquisition of lands for the opening and extending of Lawrence Street, from Flushing Avenue to Winthrop Avenue, in the First Ward, Borough of Queens, City of New York. Heard on motion to confirm final report of commissioners of estimate and assessment. Report confirmed in part, and referred back in part.

Archibald R. Watson, Corp. Counsel (Joel J. Squier and Walter C. Sheppard, of counsel), for the motion.
William R. Keese, for United Boroughs Realty Co.
Harold C. Knoeppel (William R. Keese, of counsel), for Leininger.
Charles Benner, for East River Land Co.

BENEDICT, J. This is a motion to confirm the report of commissioners of estimate and assessment. Certain of the property owners have filed objections which require separate consideration.

[1] 1. The United Boroughs Realty Company objects to the amount of the assessment for benefit made upon its property, basing its objection on a stipulation between that company and the city, whereby it agreed to cede to the city for the sum of $1 certain property lying within the boundary lines of certain streets proposed to be opened in the borough of Queens, including Lawrence street. The stipulation contained the following provision:

"It is further stipulated and agreed that the remaining land of the said United Boroughs Realty Company immediately abutting on the lands con-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

veyed, and extending to the center line of the block, shall be exempt from any and all charge for assessments for benefit, except its proportionate share of any and all awards that may be made for buildings in this proceeding, and its proportionate share of the expenses incurred in said proceedings to date, amounting as follows: In the proceeding for Lawrence street, to the sum of one hundred and sixty-five dollars ($165.00). * * * "

The commissioners have included in making the assessment upon the objector's remaining property affected by this stipulation an amount which they evidently determined to be its proportionate share of the awards for damages occasioned to buildings by reason of changes of grade. Of this the objector complains. The amount awarded in the whole proceeding for buildings or parts of buildings actually taken was $694.08, one-third of which, $231.36, was assessed upon the city; and the objector claims that only its proportionate share of the remaining two-thirds should have been assessed upon it, in addition to the stipulated sum of $165, its proportionate share of the costs of the proceeding up to October 28, 1910, the date of the stipulation. The awards for damages for changes of grade amounted to $13,286.54, and the corporation counsel urges that the objector was properly assessed with its proportionate share of this amount on the theory that awards on account of changes of grade are made only for damages to buildings by reason of such changes, and hence that such awards are comprehended by the exception in the stipulation of "any and all awards that may be made for buildings in this proceeding."

If I had nothing but the stipulation itself to guide me in its construction, I should have no hesitation in saying that the words "awards that may be made for buildings" included only awards for buildings or parts of buildings actually taken. These words are not apt nor suitable, in my opinion, to describe or embrace awards made for damages resulting from changes of grade, which are ordinarily spoken of as "awards for changes of grade" or by some similar expression.

The stipulation on its face, however, purports to be made pursuant to the provisions of section 994 of the city charter (Laws 1901, c. 466), and therefore I feel constrained to construe this stipulation with reference to the provisions of the charter relating to condemnation proceedings. Section 994 of the charter does not prescribe the terms upon which the city is authorized to make such a stipulation, but merely authorizes the city in general terms to agree with owners and other persons interested with respect to the cession of lands to be taken, and with respect to the compensation to be paid for the same, and the sums to be paid by the owners or other persons interested for benefit to their remaining lands. Section 992, however, provides for the voluntary cession to the city without compensation, before the appointment of commissioners, of any lands to be taken, and provides that in such case the lands fronting on the portion of the street conveyed and extending to the center of the block on either side shall not be chargeable with any of the expense of opening the residue of the street, "except the due and fair proportion of the awards that may be made for buildings as aforesaid."

It was apparently the intention of the parties that the cession in

pursuance of the stipulation under consideration should be substantially on the terms prescribed by section 992 for cessions made before the appointment of commissioners. Hence the words used in the stipulation, "except its proportionate share of any and all awards that may be made for buildings in this proceeding," must be regarded as used in substantially the same sense that the similar words just quoted from section 992 are used. It therefore becomes important to ascertain what provision is referred to by the words "as aforesaid." There is no previous reference in section 992 to awards for buildings, and the only previous reference thereto in the charter provisions relating to condemnation proceedings is in section 980, which reads in part as follows:

"If the said commissioners of estimate shall judge that any intended regulation will injure any building or buildings not required to be taken for the purpose of opening, extending, enlarging, straightening, altering or improving such street or part of a street, they shall proceed to make, together with the other estimate and assessments required by law to be made by them, a just and equitable estimate and assessment of the loss and damage which will accrue, by and in consequence of such intended regulation, to the respective owners, lessees, parties and persons, respectively, entitled unto or interested in the said building or buildings so to be injured by the said intended regulation; and the sums or estimates of compensation and recompense for such loss and damage shall be included by the said commissioners in their report and included in whole or in part in the assessment for benefit, provided the board of estimate and apportionment so specifically directs."

It was held (see Matter of Mayor [Perry Ave.] 118 App. Div. 874, 103 N. Y. Supp. 1069) that section 979 of the charter indicated that a change of grade is a "regulation," and that an abutting owner whose building was injured in consequence of such change of grade was entitled to recover damages resulting therefrom, citing Matter of Mayor (Trinity Ave.) 81 App. Div. 215, 80 N. Y. Supp. 732. Thus the words "awards that may be made for buildings" in section 992 must, I think, be held to include awards made for damages to buildings by reason of changes of grade; and, for reasons already stated, the words used in the stipulation must be given a like interpretation.

It follows that the assessment upon the property of the United Boroughs Realty Company does not violate the stipulation, and should be permitted to stand.

2. Peter A. Leininger objects to the awards with respect to damage parcels 43–67, inclusive, and 71–98, inclusive, both on account of the amounts awarded, and also because the awards were made to unknown owners.

[2] (a) As to this latter ground of objection, it is claimed by the corporation counsel that the land within the lines of parcels 43–67 never belonged to Mr. Leininger, and the basis of this claim is apparently the Franklyn map, so called, showing property on the northwest side of Lawrence street between Hoyt and Woolsey avenues, and showing a boundary line in that street which appears to be a little to the southeast of the center line. The so-called Leininger map (which has been submitted to me, but, so far as I can ascertain from the record, not put in evidence), showing property on the southeast

136 N.Y.S.—54

side of Lawrence street between the same avenues and also to the southwest of Hoyt avenue, seems to correspond with the Franklyn map in placing the boundary line to the southeast of the center of the street. The deed from Morgenthaler to Leininger, produced to prove his title, bounds his property upon Lawrence street, which certainly in the absence of any description by metes and bounds would carry title to the center of the street, provided the grantor owned to the center. Under these circumstances, the commissioners could not do otherwise than make the awards for damage parcels 43–67 to unknown owners. If Leininger claims to the center of the street, some further proof of title must be produced. I cannot, however, regard the Franklyn map as furnishing anything but very weak evidence that the owners of the premises shown thereon owned beyond the center line of the street.

[3] With respect to damage parcels 71 to 98, I understand that there is no substantial claim but that they were owned by Mr. Leininger at the time title vested in the city; but the corporation counsel claims that the proof of title was not sufficient because Mr. Leininger did not appear before the commissioners or the clerk to give proof in person of his possession, and as to the freedom of the premises from incumbrances by way of leases, mortgages, judgments, and other liens, etc., but contented himself with submitting an affidavit. In my opinion it is reasonable to require the owner, in the absence of some sufficient excuse, to appear personally before the clerk for examination respecting these matters, and therefore I shall not interfere with the report on this ground; but, as the report must be sent back for reasons stated below, an opportunity will be given to Mr. Leininger to appear for personal examination before the clerk to the commissioners. At the same time he will be afforded an opportunity to prove title, if he can, to damage parcels 43–67.

I should here call attention to the fact that there appears to be some doubt whether the deed from Morgenthaler to Leininger covers the lots abutting on damage parcels 71, 72, and 73. Reference to an old tax map of Long Island City shows lot No. 5 in block 90 as being 200 feet northeasterly from Hoyt avenue.

(b) With respect to the objection as to the amounts of the awards, it is claimed on the part of the city that damage parcels 43–67 are of only nominal value, because lying in the center of a street, and not being in the ownership of abutting owners, and that damage parcels 71–98 are burdened with easements of right of way, and hence that awards at the rate of 50 cents per running foot, which was the rate adopted by the commissioners, were proper.

[4] If the land of Leininger within the lines of proposed Lawrence street was burdened with easements of right of way, although he was entitled to a substantial award, he was not entitled to the full fee value of the land. Matter of Mayor (Trinity Ave.) 81 App. Div. 215, 221, 80 N. Y. Supp. 732; Matter of Ninety-Fourth Street, 22 Misc. Rep. 32, 37, 49 N. Y. Supp. 600.

There was no evidence produced by the city which would sustain a finding that the land belonging to Leininger within the lines of pro-

posed Lawrence street was subject to private easements of right of way.

[5] The so-called Franklyn map, and sales of lots fronting on Lawrence street with reference thereto, if any such sales were made (as to which I find no competent evidence), could, of course, have no effect upon property not owned by the owners of the property shown on that map (Klug v. Jaffers, 88 App. Div. 247, 85 N. Y. Supp. 423), and hence no effect on the land in the proposed street owned by Leininger.

[6] The deed from Morgenthaler to Leininger was ineffectual to create private easements over Lawrence street between Hoyt and Woolsey avenues, without proof that Leininger had conveyed to others some part of the premises fronting on Lawrence street acquired by him under that deed, or other premises owned by him fronting on Lawrence street between Hoyt and Woolsey avenues, and in such deeds of conveyance had described the property as bounded by Lawrence street, or else that Leininger's grantor or some previous common owner had conveyed other premises in the same block to other parties with reference to Lawrence street.

[7] So, also, the unfiled Leininger map (which is not in evidence) is ineffectual to create private easements without proof of the conveyance of one or more lots or blocks of property in Lawrence street between the avenues mentioned with reference to the map or to Lawrence street. All of the authorities which deal with the creation of private easements of right of way over unopened streets support these conclusions. Matter of Eleventh Avenue, 81 N. Y. 436, 446; Matter of Village of Olean v. Steyner, 135 N. Y. 341, 344, 32 N. E. 9, 17 L. R. A. 640; Lord v. Atkins, 138 N. Y. 184, 191, 33 N. E. 1035; Matter of Adams, 141 N. Y. 297, 36 N. E. 318; Reis v. City of New York, 188 N. Y. 58, 70, 80 N. E. 573.

[8] The question whether there was proof sufficient to show the existence of a public easement is more difficult on account of the case of Matter of City of Brooklyn—North Thirteenth Street, 73 N. Y. 179, 184. That case seems to hold that a deed which in any way even mentions an unopened street in connection with the description of the land conveyed constitutes as against the grantee proof of a dedication of the land lying in such street to the public use, which dedication is accepted when the city directs the opening of the street. At least such a deed is sufficient, it seems to be held, to cast on the claimant for compensation the burden of proving that the land so mentioned is "not in fact a street by dedication or otherwise." It is not believed that this case, decided in 1878, expresses the law as it is generally understood to-day. See Matter of Eleventh Ave., 81 N. Y. 446. So far as the proposition that taking proceedings to open the street constitutes an acceptance of the supposed dedication is concerned, the case was overruled by Matter of Village of Olean v. Steyner, 135 N. Y. 343, 32 N. E. 9, 17 L. R. A. 640, where it was held that the commencement of proceedings to open a street is an admission on the part of the municipality that it has not been dedicated to the public. In that case, however, the municipality commenced the

proceedings to acquire an easement which was the same right as that claimed to have been dedicated, while in the case at bar the proceeding is brought to acquire a fee, and the claim of a dedication, based on the deed to Leininger, can be only of an easement. Hence in this case the commencement of the proceeding cannot be regarded as an admission that there had been no dedication of 'an easement to the public. However, there can be no dedication without an acceptance. Niagara Falls Suspension Bridge Co. v. Bachman, 66 N. Y. 261, 269; People v. Underhill, 144 N. Y. 316, 323, 39 N. E. 333; Matter of Hunter, 163 N. Y. 542, 548, 57 N. E. 735, 79 Am. St. Rep. 616. There must be proof of acceptance (Matter of Hunter, supra), and "the acceptance must be secundum forman doni." Niagara Falls Susp. Bridge Co. v. Bachman, supra. The offer to dedicate, if any was evidenced by the deed to Leininger, was an offer to dedicate an easement, and was not accepted by the institution by the city of proceedings to acquire a fee.

[9] The only other evidence from which acceptance could have been inferred was that of user by the public. The witness Ryan, testifying on June 3, 1909, said in substance that Lawrence street, between Hoyt and Woolsey avenues, had not to any great extent been laid out as a street "up to four or five years ago," when "they" began to travel over the same, adding that "it was more of a marshy condition of land, on the easterly side" (Leininger's side). Thus public travel did not commence earlier than 1904, and this proceeding was commenced in 1905. Ryan also testified that the value of the interest taken in connection with damage parcels 71–98 was $2,525. From his testimony it is apparent that he fixed this value only after careful search for evidence to prove the existence of easements. The evidence of user was therefore insufficient to show an acceptance (People v. Underhill, 144 N. Y. 316, 324, 39 N. E. 333), and it was wholly inadequate to show the existence of a public easement by user alone (Speir v. Town of New Utrecht, 121 N. Y. 420, 24 N. E. 692). There was, therefore, no evidence to support the finding of the commissioners that the land of Leininger within the lines of proposed Lawrence street was subject to easements, public or private. Hence in making their awards for the damage parcels of which he is the owner the commissioners acted on a wrong principle, and hence their report should be sent back for revision. Upon the rehearing before the commissioners either party may offer further evidence with respect to easements and further proof with respect to the title to the damage parcels claimed by Leininger.

[10] On the part of the city my attention has been called to the award made for damage to the building on damage parcel 70A by reason of the intended regulation of Lawrence street; it being urged that such an award can be made only if there is a change from a prior established grade, or a building built with reference to the grade of a highway established by a 20-year user. It is needless to say that this action of the commissioners does not of itself show that there was a prior grade legally established or a highway estab-

lished by a 20-year user. If there was evidence constituting a basis for this award, it has not been called to my attention; but a careful search of the record does not disclose any evidence of action by the proper authorities to establish legally any such prior grade, nor any evidence of the user of Lawrence street in front of damage parcel 70A as a highway for twenty years.

3. (a) So far as concerns the objection that the awards for the parcels claimed by the East River Land Company are made to unknown owners, it is sufficient to say that the East River Land Company rested on an affidavit of title, and did not present oral proof of possession and of the nonexistence of mortgages and other liens. This claimant will have opportunity on the rehearing herein directed to present such proof.

[11] (b) For the parcels claimed by the East River Land Company the commissioners made small awards only, apparently on the theory that these parcels also were burdened with easements. The commissioners acted on a wrong principle in so doing, because there was no sufficient evidence to support a finding that there were either public or private easements over the land claimed by the East River Land Company within the lines of proposed Lawrence street. The so-called Rickert-Finley map, filed in 1907, after this proceeding was commenced, and after title vested, is not relied on to establish easements. It would not of itself, under the authorities above cited, constitute proof of the existence of either public or private easements, and there is no evidence of any conveyances of lots or blocks of property fronting on Lawrence street with reference to this map. There was vague testimony of user and conveyances given by the witness Ryan, who apparently assumed to decide the question of law as to whether the damage parcels in question were subject to easements. The witness Johnson, on the other hand, testified to the existence of a stone wall across Lawrence street at the beginning of the East River Land Company's property, and another, or others, farther along, and this testimony was not contradicted. The commissioners' view would show conditions as they existed at the time, but it could hardly show user for a sufficient length of time to establish any easement. If conveyances referring to street lines are relied on, they should have been put in evidence. City maps, for purposes of assessment or otherwise, cannot effect a dedication nor create private easements. People v. Underhill, 144 N. Y. 325, 39 N. E. 333. I have not been referred to any evidence, nor have I found any, showing that the damage parcels claimed by the East River Land Company were at the time of the vesting of title in separate ownership from the abutting property on the northwest side of the street. The awards for the damage parcels claimed by the East River Land Company must also be sent back for revision, and, upon rehearing, both parties must have opportunity to introduce evidence on the questions of title and easements.

The report will be confirmed as to all awards except those for damage parcels 43 to 67, inclusive, 71 to 98, inclusive, 108 to 132, inclusive, and 140 to 144, inclusive. As to these parcels, the report will be

referred back to the same commissioners, with directions to revise the awards in accordance with the principles enunciated in this opinion, and, if they shall increase the awards or any of them, then to revise the assessments accordingly. Settle order on notice.