GRANBY PULP AND PAPER COMPANY, Respondent, *v.* THE CITY OF FULTON, Appellant.

Fourth Department, November 19, 1919.

**Deeds — conveyance to city for street purposes — what amounts to delivery — right of city to open deeded street after six years' delay — Highway Law, section 234, construed — records — bona fide purchaser — deed of land covering street previously conveyed to city.**

Where the owner of land within the limits of a city files a map in the office of the clerk of the county, subdividing said tract into blocks delineating streets thereon, and thereafter executes a deed to the city of the parcels of land covering the streets, containing a declaration that said parcels are so conveyed " for the purpose of being used as public highways," and delivers said deed to the mayor of the city who in turn delivers it to the city clerk, the legal custodian of such papers for the city, and thereafter the board of public works by resolution duly adopted directs the clerk to have the said deed recorded, the delivery of the deed to the mayor in connection with the other circumstances stated establishes, presumptively, at least, a delivery to the city, especially in view of the fact that the deed was beneficial to it.

Where land has been deeded to a city for street purposes, section 234 of the Highway Law providing in effect that a highway not opened and worked within six years from the time it was dedicated to the use of the city, or laid out, shall cease to be a highway, does not apply.

The failure of a city to open streets for more than six years after the land was deeded to it for that purpose does not result in the city losing its title or right to open the same for public use.

Although a deed of land to a city for street purposes is not recorded until after another deed by the grantor including said land has been recorded, the subsequent purchaser is not protected by section 291 of the Real Property Law, where in his deed the existence of the street is expressly recognized.

FOOTE, J., dissented.

APPEAL by the defendant, The City of Fulton, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Oswego on the 3d day of December, 1917, upon the report of a referee appointed to hear and determine the issues.

An appeal is also taken, as stated in the notice of appeal, from the findings, conclusions and decision of the referee.

*William S. Hillick,* for the appellant.

*Piper & Pendergast* [*Giles S. Piper* of counsel], for the respondent.

KRUSE, P. J.:

The controversy is over Schenck street, so called, between First and Second streets in the city of Fulton, and the question is whether this strip of land is free from street easements, as plaintiff contends. The plaintiff incumbered the street with piles of pulpwood; the defendant sought to remove the same and work the street. Thereupon this suit was brought, resulting in a judgment permanently enjoining the city.

In 1896 Schuyler C. Schenck, the owner of a certain tract of land, which included the lands in question, had a map made of said lands, and filed the same in the office of the clerk of Oswego county, subdividing said tract into blocks and delineating streets thereon, and thereafter conveyed different parts of said tract, describing the same according to the map.

Schenck street is one of the streets so delineated and extends from Third street easterly to First street, along the northerly bounds of blocks 106 and 107. Second street divides blocks 106 and 107, bisecting Schenck street. Second street has never been opened, and the plaintiff, the owner of block 107, objects to opening Schenck street between Second and First streets.

On or about May 4, 1906, a deed made by Schenck and others to the city was delivered to the mayor of the city, conveying the several parcels of land covering the streets so delineated, containing the declaration that said parcels are so conveyed " for the purpose of being used as public highways in common by all persons wishing to travel the same." The mayor delivered this deed to the clerk of the city, the legal custodian of such papers for the city, who retained the same until it was recorded in the Oswego county clerk's office February 26, 1914, pursuant to a resolution of the board of public works adopted February 23, 1914, instructing the city clerk to record all unrecorded deeds belonging to the city.

The plaintiff entered into possession of block 107 under a lease made to it by Schenck, dated September 12, 1911, containing an option to purchase the premises. The plaintiff availed itself of this option, and on March 19, 1913, the conveyance was made by Schenck to the plaintiff, conveying block 107, " together with all the right, title and interest of the first parties in and to the streets surrounding said block, as laid down on the map made by O. C. Breed for Schuyler C.

Schenck and filed in Oswego county clerk's office May 23, 1896."

While this strip of land had been used as a lane or driveway to some extent while Schenck owned the premises, and afterward, it was not until the 24th of August, 1915, that the city undertook to open and work it. On that day the superintendent of public works, by the direction of the board of public works and commissioners of public works, entered upon this strip, removed some pulpwood and did some plowing, but was restrained from continuing the work by the preliminary injunction issued in this action.

The plaintiff contends that the offer to dedicate was revoked before its acceptance by the city, and, therefore, the dedication never became effective. But it is not so clear that the plaintiff alone could revoke the offer without the consent of the owners of the lots in the adjoining block. (*White* v. *Moore,* 161 App. Div. 400, 403; *Kerrigan* v. *Backus,* 69 id. 329; *Matter of Closing William & North William Streets, Borough of Manhattan,* Daily Record, Oct. 2, 1919.) But even so, here there was an absolute conveyance to the city. I think the delivery of the deed to the mayor, in connection with the other circumstances before stated, presumptively, at least, establish a delivery to the city, especially in view of the fact that the deed was beneficial to the city. (*Beckrich* v. *City of North Tonawanda,* 171 N. Y. 292, 300.)

The provision of the Highway Law (§ 234, as amd. by Laws of 1915, chap. 322), that a highway not opened and worked within six years from the time it has been dedicated to the use of the public, or laid out, shall cease to be a highway, does not apply where the city owns the fee. Evidently the officers of the city thought the public interests did not require the opening and improvement of the street until the attempt was made to do so. Their failure to open it sooner did not result in the city's losing its title or right to open the same for public use. (*New York Central & H. R. R. R. Co.* v. *City of Buffalo,* 200 N. Y. 113.)

But it is further contended that the plaintiff being a *bona fide* purchaser, for value, without notice, actual or constructive, of the deed to the city, and the plaintiff's deed having been recorded prior to the recording of the deed to the city, the title of the city is subordinate to that of the plaintiff. (Real

Prop. Law, § 291.)    But the plaintiff's deed expressly recognizes the street (*Matter of Village of Olean* v. *Steyner*, 135 N. Y. 341), and, besides, as it seems to me, it was not the intention, as evidenced by the language of the deed and the surrounding circumstances, to include in the plaintiff's conveyance the right which had theretofore been conveyed to the city.

I think we should hold that the section of Schenck street, between First and Second streets, belongs to the city for street purposes, and that it has the right to open and work the same; that the findings of fact to the contrary should be modified or stricken out, and new findings made, and that the judgment be reversed and complaint dismissed, with costs.

All concurred, DE ANGELIS, J., in result only, except FOOTE, J., who dissented and voted for affirmance.

Judgment reversed, with costs, and complaint dismissed, with costs.    Findings disapproved and new findings made in accordance with opinion.