---

(118 App. Div. 874)

### In re PERRY AVE. IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. April 12, 1907.)

1. MUNICIPAL CORPORATIONS—ASSESSMENTS—EXEMPTIONS.

   Laws 1879, p. 397, c. 310, provides that no tax or assessment shall be imposed on land used for cemetery purposes, but that whenever any such land shall cease to be so used any tax or assessment which would have been imposed, except for the statute, shall become a charge on the land.

*Held* that, in a proceeding for the opening of a street, land used for cemetery purposes was immune from ascertainment of its share for an assessment for benefits, so that, even if it should ever cease to be so used, it would not be subject to any charge for the improvement.

2. SAME.

The exemption is not confined to that part of land owned by a cemetery association actually occupied by graves and used for purposes of interment.

3. SAME—CHANGE OF GRADE—DAMAGES.

In the absence of a statute, the owner of land abutting upon a street is without claim against the municipality for consequential damages resulting to his property, either by reason of the establishment of a grade different from the natural grade or for the change of an established grade.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 925–928.]

4. SAME.

Greater New York Charter, Laws 1901, p. 411, c. 466, § 980, provides that, if the commissioners of estimate shall judge that an intended regulation will injure a building not required to be taken for the purpose of opening or improving any streets, they shall make an assessment of the damages that shall accrue to the owner of the building. In proceedings to open a street, and by which the grade would be altered, it appeared that the owner of the tract through which the proposed street ran conveyed certain lots so as to give the grantee an easement of light, air, and access over the land proposed to be taken, retaining in himself the fee to the bed of the proposed street; that the grantee erected a building, but thereafter the original owner granted to the city all his title and interest in the bed of the street. *Held*, that such grant did not prevent an award of damages to the original owner's grantee because of consequential damages to the building.

5. SAME.

Greater New York Charter. Laws 1901, p. 400, c. 466, § 951, providing that after the taking effect of the charter there should be no liability to abutting owners for originally establishing a grade, relates exclusively to assessments for local improvements other than those confirmed by a court of record, and has no application to proceedings to open a street.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 923.]

Appeal from Special Term, New York County.

Judicial proceedings on the opening of Perry avenue. Appeals by the city of New York and others from an order confirming the report of the commissioners of estimate and assessment. Reversed, with instructions.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Joseph A. Flannery, for Brandt, Wilson, and Woodlawn Cemetery.
Thomas G. Blake, for the city of New York.

SCOTT, J. Two questions are presented by the appeal from the order modifying, and, as modified, confirming, the report of the commissioners of estimate and assessment in this proceeding.

The first question relates to so much of the report as affects the property of the Woodlawn Cemetery, a rural cemetery incorporated under chapter 133, p. 125, of the Laws of 1847, and the subsequent acts amendatory thereof. It owns a tract of land in the vicinity of

the proposed improvement which, but for the fact that it is cemetery property, would be deemed to be benefited by the improvement and properly assessable therefor.   In distributing the assessment for benefit the commissioners reported assessments aggregating $568.51 as the proportion of cost equitably chargeable against the cemetery property, but appended to their report a note to the effect that such assessments were not to be collected or enforced so long as the property is used for cemetery purposes.   The court below struck out this assessment, and from so much of the order the city of New York appeals.

The statute under which the cemetery association claims exemption from assessment is chapter 310, p. 397, of the Laws of 1879 and reads as follows:

"Section 1. No land actually used and occupied for cemetery purposes shall be sold under execution, or for any tax or assessment, nor shall such a tax or assessment be levied, collected or imposed, nor shall it be lawful to mortgage such land, or to apply it in payment of debts, so long as it shall continue to be used for cemetery purposes.

"Sec. 2. Whenever any such land shall cease to be used for cemetery purposes any judgment, tax or assessment which, but for the provisions of this act, would have been levied, collected or imposed shall thereupon forthwith, with interest thereon, become and be a lien and charge upon such land and be collectible out of the same."

It is apparent that this act is open to two possible constructions. One, contended for by the city, would permit the ascertainment and fixation of the ratable share of the assessment which should be imposed upon the property but for its use as a cemetery, postponing the time when such assessment should become a lien and be collectible until the time, if it ever arrived, when the land would cease to be used for cemetery purposes.   The other construction, contended for by the cemetery association, would render the property used for cemetery purposes immune even from present ascertainment of its ratable share of an assessment for benefit, so that, if the property should ever cease to be used for cemetery purposes, it would be burdened with no charges for benefits derived from past public improvements, and liable only to such assessments as might be laid in the future.   This second construction is that which has been given to the statute by the Appellate Division in the Second Department, wherein is comprised a large proportion territorially of the city of New York.   Matter of White Plains Presbyterian Church, 112 App. Div. 130, 98 N. Y. Supp. 63.   In deference to that opinion, and to promote uniformity of practice in proceedings like the present, we adhere to the same construction.

We cannot accede to the claim made on behalf of the city that the exemption for assessment, whatever its extent, applies only to so much of the land owned by the cemetery association as has been actually occupied for graves and used for purposes of interment.   As was said by the Court of Appeals, with reference to a similar exemption contained in chapter 133, p. 125, of the Laws of 1847, the purpose of these provisions is the convenience of sale, the security of titles, and the benefit and protection of lot owners.   We have no reason to suppose, from any language used in the act, that it was the intention of the Legislature that any portion of the cemetery land not laid out into

lots, but which must nevertheless be held exclusively for cemetery purposes, should be subjected to taxation. People ex rel. Oak Hill Cemetery Ass'n v. Pratt, 129 N. Y. 68–75, 29 N. E. 7. That the land acquired and owned by the Woodlawn Cemetery is "held and occupied exclusively for the burial of the dead" was determined by this court in Whittemore v. Woodlawn Cemetery, 71 App. Div. 257, 75 N. Y. Supp. 847. The court below was therefore right in striking from the report of the commissioners the amount returned as the sums to be assessed upon the property of the cemetery. It should, however, have gone further, and have returned the report to the commissioners for a redistribution of that sum and its inclusion in the assessments to be laid upon the property benefited by the improvement and not exempted from assessment. In this respect the order appealed from must be modified; otherwise, there would be a deficiency in the fund necessary to meet the cost of the improvement.

The second question raised by the appeal is whether or not an award for damages can be made to the owner of a lot abutting upon the street, but who owns no part of the land to be acquired, for incidental damage to a building standing upon the abutting lot, and which is "not required to be taken" for the proposed street opening. The relevant facts upon which the question is presented are as follows: Prior to October 24, 1890, John G. Wood was the owner of a tract of land through which runs the avenue proposed to be acquired in this proceeding. On the date named he made a number of conveyances of lots abutting upon the proposed avenue, and so described the lots conveyed as to give to his grantees easements of light, air, and access over the land now proposed to be taken for Perry avenue, retaining in himself the fee to the bed of the proposed avenue in front of the lots conveyed. In 1891 the appellants Brandt and Wilson erected buildings upon two of the lots thus conveyed, and in 1895 the grade of the proposed avenue was first officially established by the filing of a grade map on December 16, 1895. The present proceeding was initiated on June 25, 1897, by an application to the court for the appointment of commissioners of estimate and assessment, and commissioners were appointed on December 31, 1897. On September 20, 1897, Wood, the original owner of the tract, and the grantor under whom the appellants held title, executed a deed of cession to the city of whatever title and interest he still had in the bed of the avenue upon which the lots of the appellants abut. It is said that Perry avenue was actually worked and used as a street, at its natural grade, for some time before proceedings for its acquisition by the city were initiated; but the profile map filed in 1895 shows that it is proposed, after acquisition, to raise its grade about 10 feet. The commissioners considered that the damage to the buildings owned by appellants was substantial, but refused to make any award therefor, because, as they thought, the cession of the bed of the street by Wood prevented the making of any award for consequential damages to the abutting property. The court below upheld their action in this regard.

The only doubt in the case arises from the fact that Wood had conveyed the abutting lots before the proceeding to acquire the street had been begun. In the absence of a statute, the owner of land abutting

upon a public street is without claim against the municipality for consequential damages resulting to his property, either by reason of the establishment of a grade different from the natural grade or for the change of an established grade. Radcliffe's Ex'r v. Mayor, 4 N. Y. 195, 53 Am. Dec. 357. The harsh and often unjust consequences that followed upon the application of this rule has led to the adoption by the Legislature of statutes giving a claim for damages in certain cases. Among other statutory provisions to this effect is section 980 of the Greater New York Charter (Laws 1901, p. 411, c. 466), which provides as follows:

"If the said commissioners of estimate shall judge that any intended regulation will injure any building or buildings not required to be taken for the purpose of opening, extending, enlarging, straightening, altering or improving such street or part of a street they shall proceed to make, together with the other estimates and assessments required by law to be made by them, a just and equitable assessment of the loss and damage which will accrue, by and in consequence of such intended regulation, to the respective owners, lessees, parties and persons respectively entitled unto or interested in the said building or buildings so to be injured by the said intended regulation; and the sums or estimates of computation and recompense for such loss and damage shall be included by said Commissioners in their report and included in whole or in part in the assessment for benefit, provided the board of estimate and apportionment so specifically directs."

This same provision, in substantially the same form, was embodied in section 987 of the New York consolidation act, and prior to the adoption of that act had been in force since 1816. Chapter 160, p. 172, Laws 1816. The provisions of section 979 of the Greater New York Charter (Laws 1901, p. 410, c. 466), authorizing the commissioners to obtain a profile and plan of the intended regulation of the street, showing the proposed elevation or depression thereof, indicates that the "regulation" of the street from which it was apprehended that buildings on abutting property might suffer meant the establishment of a new grade or a change of grade. It is perfectly clear that, if Wood had neither conveyed away the abutting lots nor ceded the bed of the street to the city, but had himself erected the houses, he would have been entitled to the consequential damages resulting to the buildings from the proposed regulation or change of grade of the street. Matter of Trinity Avenue, 81 App. Div. 215, 80 N. Y. Supp. 732.

The fact that Wood, after he had conveyed the abutting lots, made a deed of cession to the city of what remained to him of title to or interest in the bed of the street, cannot affect the appellant's rights in this proceeding, for Wood could then convey to the city no more than he then had himself. Prior to the conveyance of the abutting lots he had, as owner of the whole tract, every right to light, air, and access that he chose to exercise over any part of the tract for the benefit of any other part. By his deeds of the abutting lots he conveyed, not only the fee of those lots, but also the right of light, air, and access to those lots over the portion of the tract known as Perry avenue and now sought to be acquired. He had thereby conveyed away to his grantees any right which he had to change the grade of that portion of the tract designated as Perry avenue, so as to render the right of ingress and egress to and from the abutting lots materially more difficult. Cunningham v. Fitzgerald, 136 N. Y. 165, 33 N. E. 840, 20

103 N.Y.S.—68

L. R. A. 244. He certainly could not convey to the city any greater or better estate in the bed of Perry avenue than he had himself. What he could convey, and all that he could convey, to the city, was the fee of the bed of the avenue, less these rights of ownership over it, such as the right to change the grade, of which he had deprived himself by his prior deeds of the abutting lots. These rights could only be acquired or extinguished by the exercise by the city of the right of eminent domain. The appellants' right to compensation is not, therefore, affected in any way by the deeds from Wood to the abutters, nor by his cession to the city. By the deeds of the abutting lots Wood simply conveyed to the grantees that right to recover consequential damages for buildings injured, but not taken, which he himself would have had if he had retained title to the whole tract; and, having conveyed that right before his cession to the city, he could not include it in that cession. The appellants are therefore entitled to the same damages that Wood would have been entitled to if he had never sold the abutting lots, and the rule applied in Matter of Trinity Avenue, supra, applies.

We have not overlooked section 951 of the Greater New York Charter, which provides, inter alia, that after the taking effect of that act there should be no liability to abutting owners for originally establishing a grade. That section is a paraphrase of sections 873 and 874 of the New York City consolidation act which were in force when the Trinity Avenue Case was decided. It is to be found in title 2, c. 17, p. 397, of the charter, which relates exclusively to assessments for local improvements other than those confirmed by a court of record. It is a rule established only with respect to such improvements, and has no relation to or bearing upon proceedings for street openings like the present.

Our conclusion, therefore, is that the order appealed from must be reversed, and the report returned to the commissioners, with instructions to redistribute the amount found as the benefit to the property of the Woodlawn Cemetery, and to include awards to the appellants Brandt and Wilson for damage to their buildings not required to be taken for the opening of the avenue, with $10 costs and disbursements to said appellants. All concur.