In the Matter˙ of the Application of THE CITY OF NEW YORK, Respondent, Relative to Acquiring Title, etc., for the Opening and Extending of Onderdonk Avenue from Metropolitan Avenue to Catalpa Avenue, in the Second Ward, Borough of Queens, and in the Eighteenth Ward, Borough of Brooklyn, City of New York.

ANTONIO CRAFA and Others, Appellants.

Second Department, October 28, 1921.

**Municipal corporations — proceedings to acquire title in fee to street in city of New York — street as dedicated and opened showed encroachments — street as paved did not require removal of encroachments — owners failed to present claims in prior proceedings for regulating and grading street — commission had no power to award damages because of encroachments — in proceedings to acquire fee damage awards cannot be made for encroachments if city does not intend to interfere with porches and commission fails to find any injury to buildings.**

In proceedings to acquire the fee to a street in Greater New York under chapter 17, title 4, of the Greater New York charter, it appeared that the street in question had been dedicated to and accepted by the city over twenty years before; that the official map showed a street measuring sixty-six feet between property lines, and as thus shown porches, platforms and steps of abutting property encroached upon the street; that in grading and paving the street but thirty-six feet thereof was used; that in proceedings regulating and grading the street proper notices were served upon the abutting owners to present claims for damages, but none were

presented; that in the present proceeding to acquire the fee the abutting owners claimed damages because of said encroachments.

*Held,* that the commissioners, appointed only to acquire the fee in the street, possessed no power to award damages for an executed and accepted change of grade made long before and after proceedings had been had establishing and regulating the change of grade in which, upon due notice, the abutting owners did not present any claims for damages.

Moreover, the report fails to find, as required, " that any intended regulation will injure any building," and also omits the essential conclusion that any loss will accrue by and in consequence of such intended regulation to the respective owners; there is no basis for damage awards if the city does not interfere with the stoops and projections.

JAYCOX, J., dissents, with opinion.

APPEAL by Antonio Crafa and others from so much of an order of the Supreme Court, made at the Queens Special Term and entered in the office of the clerk of the county of Queens on the 7th day of June, 1916, as denies the motion to confirm the report of commissioners of estimate of awards for damages claimed for intended regulation of Onderdonk avenue, borough of Queens, and remitting the report to the commissioners for revision and correction.

Onderdonk avenue follows the location of an old highway that crosses the boundary line between the boroughs of Brooklyn and Queens in the Ridgewood section. These appeals affect lots in the fifteen city blocks between Suydam street on the north and Madison street on the south, all within the borough of Queens. The awards here under review are for damage claimed for change of, or intended regulation of grade to buildings on twenty-six damage parcels, and the sums awarded vary from $150 to $350, amounting together to upwards of $6,300.

Onderdonk avenue was originally dedicated by filing of maps by various land proprietors in 1891 and 1892. On these maps it was shown as sixty-six feet wide. Upon consolidation new city maps were prepared both for Queens and Brooklyn boroughs; but in advance of such maps the city paved and flagged the nine blocks of Onderdonk avenue between Palmetto and Stanhope streets in June, 1908, and the part from Stanhope street to Elm street in 1908, which was accepted by the city in 1909. The section of the city map covering this part of the avenue (section 15) was accepted

Second Department, October, 1921. [Vol. 198

by the board of estimate and apportionment and thereafter filed with the clerk of Queens county on August 10, 1909.

The lines of this official map correspond to the private maps theretofore filed, showing a street measuring sixty-six feet between property lines. In grading, however, the curbs were set to leave a roadway thirty-six feet wide. The sidewalks with the curbing and masonry left a side margin next the building line of about six or seven feet. This official map showed grades at every street corner, which purported to have been adopted respectively on June 28, 1907, and on May 21, 1909. It was in strict conformity with such grades, so regulated, that the street had been paved for the middle width of thirty-six feet, besides curb and sidewalks. The city officials, however, deemed it needless to extend the grading to the full width of the sixty-six feet, leaving a sloping margin up to the front of the parcels. The profile maps of 1907 and 1909 showed that various porches, steps and platforms encroached upon the street lines. None, however, were removed, although such maps then showed the measurements both laterally from the front of the parcel, and vertically how much the surface was above or below the grade then established. Even at the extreme side property lines the profile there was but a slight drop in front of the parcels, which varied from about fifteen to eighteen inches.

Owners of buildings upon such parcels were, therefore, brought within the charter provisions for " Assessments for local improvements other than those confirmed by a court of record." (Greater N. Y. Charter [Laws of 1901, chap. 466], chap. 17, tit. 2.)

Section 951 of the charter provided: " In case the grade of any such street shall be changed, and the same shall have been regulated and graded according to the new grade, after the certificate of the cost of such regulating and grading shall have been received by the board of assessors, it shall be the duty of the said board to cause to be published in the ' City Record ' and the corporation newspapers, for at least ten days successively, a notice which shall contain a request for all persons claiming to have been injured by the said change of grade to present, in writing, to the secretary of the board of assessors, their claims, specifying a place

where and a time when the said board will receive evidence and testimony of the nature and extent of such injury. After hearing and considering the said testimony and evidence the board of assessors shall make such awards for such loss and damage, if any, as it may deem proper. The amount of the said awards shall be included in the assessment for the regulating and grading of the street in question, as a part of the expense thereof, and the said award, and the proceedings of the assessors in relation thereto, shall be subject to review by the board of revision of assessments."

In accordance with these provisions, the costs of these outlays for regulating and grading were certified to the assessors, who caused to be published notices to any claimants of damage from such change of grade to present claims. No claims were ever presented. The cost of regulating, grading and paving was accordingly duly assessed upon the neighboring lot owners benefited by such street opening. Thus was Onderdonk avenue accepted, its grades regulated, and the street legally opened under the city charter. Pursuant, however, to a general policy of city administration, steps were later taken to acquire the fee. These were conducted as condemnation proceedings under chapter 17, title 4, of the Greater New York charter.

On January 11, 1912, the board of estimate and apportionment passed the resolution in the usual form to acquire the fee of Onderdonk avenue, from Metropolitan avenue to Catalpa avenue, in the boroughs of Brooklyn and Queens, the expense to be assessed upon the property deemed benefited thereby. The petition stated that the street had been theretofore laid out upon the map of the city of New York, pursuant to law, and that the maps showing said street had been duly certified and filed in the proper offices. It is not disputed that such maps used in this condemnation proceedings, in street lines and profile are the same with those in the street opening in 1909, which delineation of the street in width and area conformed to the dedicatory maps first filed in 1890 and 1891. The Supreme Court appointed three commissioners on September 20, 1913, who made their report in April, 1916. The authority of such a commission to make

awards for change or regulation of grade was contained in sections 979 and 980 of the city charter. As amended by Laws of 1909, chapter 394, section 979 then provided:* " The said commissioners, before the completion of their estimate may obtain from the city of New York a profile or plan, if they shall deem the same to be useful, showing the intended regulation of the street or part of a street, with regard to the opening of which they have been appointed, as to the elevation or depression thereof, after the same shall be opened, extended, enlarged, straightened, altered, or otherwise improved, as the case may be; and also profiles or plans if they shall deem the same useful showing the intended regulation of the adjacent street or streets, as to the elevation or depression thereof, after such improvement."

Section 980 contained this: " If the said commissioners of estimate shall judge that any intended regulation will injure any building or buildings not required to be taken for the purpose of opening, extending, enlarging, straightening, altering, or improving such street or part of a street, they shall proceed to make, together with the other estimate and assessments required by law to be made by them, a just and equitable estimate and assessment of the loss and damage which will accrue, by and in consequence of such intended regulation, to the respective owners, lessees, parties and persons, respectively, entitled unto or interested in the said building or buildings so to be injured by the said intended regulation; and the sums or estimates of compensation and recompense for such loss and damage shall be included by the said commissioners in their report and included in whole or in part in the assessment for benefit, provided the board of estimate and apportionment so specifically directs." (Laws of 1901, chap. 466, § 980, as amd. by Laws of 1909, chap. 394, § 3.)*

The corporation counsel objected to damage awards in respect to the projecting stoops, porches and encroachments upon the street lines, although, without objection, awards of substantial sums were made for vaults, ovens and other subsurface improvements that projected under the street bed.

* See Laws of 1915, chap. 606, §§ 1, 3.— [REP.

Upon hearing at Special Term objections to the damage awards for stoops, porches and surface encroachments were sustained, and the matter sent back for correction. Such damage claimants appealed to this court.

*John J. Kearney* [*John R. McMullen* with him on the brief], for the appellants Lina Meyer and others.

*William E. Donavin* and *Thomas W. Henry*, for the appellants Antonio Crafa and others.

*Joel J. Squier* [*John P. O'Brien, Corporation Counsel, Joseph G. Mathews* and *Nathan L. Goldstein* with him on the brief], for the respondent.

PUTNAM, J.:

The question here raised is the effect of a proceeding to acquire a title in fee of a street that over twenty years before had become a highway by dedication and acceptance. At the formal street opening and filing of maps in 1909, the boundaries were established and final grades regulated. But like many city streets, the grading as then actually worked did not extend to the full width of the street property lines, so that stoops and other encroachments remained undisturbed. In the proceedings to acquire the fee in the bed of the street, the owners of these encroachments have been awarded substantial damages for the cost of possible removal of these obstructions, and in such event a further amount for restoring access to the buildings. Yet the profiles with the encroachments shown were apparent upon the city maps showing final grades established in 1907 and 1909. And there is nothing to show that this physical condition, as it existed in 1907, is not to continue as heretofore. Although the claimants' expert is uncertain and hesitating whether the ground of the awards sought is what had already been done, or is sought because of future injuries, it seems plain that if the city does not interfere with these stoops and projections, appellants can have no basis for damage awards.

In this commission, appointed only to acquire the fee in this street, resides no power to award damages for an executed and accepted change of grade made long before, after street openings and grades had been duly published, and no abutting

owners had presented claims. (*Matter of Mayor* [*Perry Avenue*], 118 App. Div. 874; *Matter of Rogers Place*, 65 id. 1; *People ex rel. New York City Church* v. *Coler*, 60 id. 77; *Matter of Prospect Street*, 77 Misc. Rep. 254; *Matter of City of New York* [*Thirteenth Ave.*], Id. 480.) The report fails to find, as required by section 980 of the Greater New York charter, " that any intended regulation will injure any building," and also omits the essential conclusion under section 980, that any loss will accrue by and in consequence of such intended regulation to the respective owners.

The error of the commissioners was in treating this formal proceeding to take title in fee to a street long opened and graded as similar to one to widen such street.

The reason and spirit of the charter provisions are that such assertions of damage shall be heard and passed upon in connection with the street opening, so that any change of grade as shown by the final profile map may be estimated and assessed. Naturally such claims should not first come forward after advance of property values. I find no basis to include in the ordinary municipal proceeding to acquire the fee, claims for removing encroachments in this street long opened and established, and included in the items allowed without the prerequisite findings of injury by any intended regulation of the avenue.

To sustain these appellants would, I think, enlarge and rewrite a special statute, representing a policy wisely restricted in regard to the city of New York. It would tend to open and despoil the city treasury, whenever the city should condemn the fee of an existing street — a result the more objectionable long after these minor modifications of grade had been accepted and acquiesced in as a welcome improvement. (*Matter of Mayor* [*Vyse Street*], 80 App. Div. 622.)

Hence I advise that the order appealed from be affirmed, with ten dollars costs and disbursements.

BLACKMAR, P. J., RICH and KELLY, JJ., concur; JAYCOX, J., reads for modification.

JAYCOX, J. (dissenting):

It should be borne in mind that no question of double payment is involved herein. No award has ever been made

to these claimants nor has any payment ever been made to them. If an award cannot be made to them in this proceeding, the result will be that, although damaged, these claimants have no redress. Such a result as that should not be permitted unless absolutely inescapable. . I agree with the Special Term that these claimants are not entitled to any award for the removal of encroachments upon this street. I do hold, however, that the grading and regulating of this street may cause injury to claimants' property not within the lines of the street; that this proceeding provides a method of fixing their damages and compensating them therefor and that these claimants are entitled to take advantage of this proceeding notwithstanding some other proceeding may have given them a like opportunity of which they did not avail themselves.

After this avenue had become a public street by dedication and acceptance, it was regulated and graded, but it was not regulated and graded to its full width of sixty-six feet. A roadbed was graded and paved, curbs were set and sidewalks laid, but outside of these sidewalks was a strip five and one-half feet in width between the sidewalks and the outer lines of the street which was not graded or regulated. In this strip are the stoops and other structures which have been referred to as constituting encroachments upon the street. The buildings of the appellants, however, are outside of the street lines, and the commissioners have found that the buildings not taken will be injured by the intended regulation of the street. This finding is well within their powers under the charter unless the appellants' right to recover has been terminated by proceedings previously had. Section 951 of the Greater New York charter (Laws of 1901, chap. 466) makes provision for the award of damages arising by reason of the change of grade in a street. It provides: " In case the grade of any such street shall be changed, and the same shall have been regulated and graded according to the new grade, after the certificate of the cost of such regulating and grading shall have been received by the board of assessors, it shall be the duty of the said board to cause to be published in the ' City Record ' and the corporation newspapers, for at least ten days successively, a

notice which shall contain a request for all persons claiming to have been injured by the said change of grade to present, in writing, to the secretary of the board of assessors, their claims," etc.   When the regulation and grading above described took place, a notice of this character was published. No claims in respect thereto were filed.   This section of the charter provides for the filing of claims only when the street shall have been regulated and graded according to the new grade.   This street was not so regulated and graded; only a portion of the street was regulated and graded.   The regulation and grading did not in any way interfere with the access to or injure the appellants' buildings in any way.   If the street had been regulated to the full width, there would have been an interference with the appellants' rights and an injury to their buildings.   They then, naturally, would have sought some means by which and the source from which they would receive recompense.   When, however, the regulating and grading were limited to a portion of the street which did not in any way injure them, they did not concern themselves with some notice which might be published in the *City Record.*   However, if they had filed claims they might well have been met with the assertion that the regulating and grading which had been done did not injure them. In any event, the regulating and grading were not according to the new grade; they were only partially so, and until the street was regulated and graded in full in accordance with the new grade I think no notice published could terminate their right to compensation for the injuries received by the regulation and grading of this street.

Subsequent to these events the city decided to acquire title in fee to the land in the bed of this street.   For that purpose application was made to the court and commissioners duly appointed.   Section 980 of the Greater New York charter at the time these proceedings were instituted provided: " If the said commissioners of estimate shall judge that any intended regulation will injure any building or buildings not required to be taken for the purpose of opening, extending, enlarging, straightening, altering, or improving such street or part of a street, they shall proceed to make, together with the other estimate and assessments required by law to be made

by them, a just and equitable estimate and assessment of the loss and damage which will accrue, by and in consequence of such intended regulation, to the respective owners, lessees, parties and persons, respectively, entitled unto or interested in the said building or buildings so to be injured by the said intended regulation; and the sums or estimates of compensation and recompense for such loss and damage shall be included by the said commissioners in their report and included in whole or in part in the assessment for benefit, provided the board of estimate and apportionment so specifically directs." (Laws of 1901, chap. 466, § 980, as amd. by Laws of 1909, chap. 394.)* The petition herein shows that the board of estimate and apportionment has specifically directed that all awards for damages caused by the *intended regulation* shall be assessed upon the property deemed to be benefited thereby. Under these provisions of the charter the commissioners of estimate have found that the buildings owned by the appellants will be injured by the intended regulation of the street. The amounts of the awards, I do not understand, are questioned.

The court at Special Term held, and this court is about to confirm that holding, that these claimants cannot recover in this proceeding because they have had a previous opportunity of recovery. There is, however, nothing in the statute under which this proceeding is instituted which in any way limits the powers of the commissioners. They are authorized to award damages for injuries to buildings caused by the intended regulation. Nothing is said as to any previous opportunity of recovery. It is to be observed also that there is nothing in section 951 of the charter which limits the right of recovery for damages incident to the grading and regulating of a street to that proceeding only. In other words, it does not say that if a claimant fails to file his claim he cannot recover in any other or different proceeding.

It is clear that these claimants have been injured. It is equally clear that the statute under which this proceeding is brought provides for an award of damages by reason of that injury. The board of estimate and apportionment

* See Laws of 1915, chap. 606, §§ 1, 3.— [REP.

thought that they were entitled to compensation and took the necessary steps to permit these commissioners to make awards for such damages. It seems to me that under these circumstances nothing but an express statutory prohibition of the payment of a previous award should prevent a recovery in this proceeding. There is no such statute and no such award has been made. The claimants are, therefore, legally and equitably entitled to be paid a just and equitable amount for the loss and damage which will accrue to them by the intended regulation of this street. The proceeding should be remitted to the commissioners to eliminate from their awards of damages the amounts awarded for the removal of encroachments and with directions to make a just and equitable estimate and assessment of the loss and damage which will accrue by and in consequence of such intended regulation to the respective parties entitled unto or interested in the buildings so injured by the said intended regulation; and the order as thus modified should be affirmed, without costs.

Order affirmed, with ten dollars costs and disbursements.